THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ANTHONY M. THEN AND BENJAMIN W. SANGOR, PLAINTIFFS IN ERROR.

Argued May 6, 1936—Decided February 11, 1937.

32

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the plaintiffs in error, *Percy Camp* and *Ira F. Smith* (*Joseph Sterling* and *John Warren,* of counsel).

For the state, *Leo Robbins,* prosecutor of the Pleas, and *Howard Ewart,* special assistant to the prosecutor of the Pleas.

The opinion of the court was delivered by

PERSKIE, J. The writ of error in this cause brings up for review the conviction of the two defendants on a charge of embezzlement and larceny of $81,320.22 in value of bonds and securities of the estate of James D. Halton. This conviction followed the trial on the indictment which had been quashed by order of the Ocean County Court of Quarter Sessions and which order was set aside by this court. *State* v. *Then,* 114 *N. J. L.* 413; 177 *Atl. Rep.* 87. Though the indictment contained six counts defendants were convicted on the first count only. This count charged as follows:

"That, on the tenth day of October in the year of our Lord one thousand nine hundred and thirty, the Toms River Trust Company, a banking corporation of the State of New Jersey, was the Administrator *Pendente Lite* of the Estate of James D. Halton, deceased, and that Anthony M. Then * * * was President and a Director, and Benjamin W. Sangor

\*   \*   \*   was a director and Chairman of the Board of Directors of said Toms River Trust Company  \*   \*   \*   and that said Toms River Trust Company  \*   \*   \*   became possessed of the goods and chattels, rights and credits, moneys and valuable securities which were of James D. Halton, deceased, and that Anthony M. Then, as President of said Toms River Trust Company  \*   \*   \*   and Benjamin W. Sangor, director and chairman of the Board of Directors of said Toms River Trust Company  \*   \*   \*   entrusted with the care and keeping of the goods and chattels  \*   \*   \*   in the possession, care and keeping of the Toms River Trust Company  \*   \*   \* did, on the tenth day of October, in the year of our Lord, one thousand nine hundred and thirty, at the Township of Dover, in the County of Ocean aforesaid, and within the jurisdiction of this court, willfully, fraudulently and feloniously embezzled and convert, take and apply to their own use and benefit, the goods and chattels, money and valuable securities of the said Toms River Trust Company [here followed a list of the securities] all of the value of Eighty-one Thousand Three Hundred Twenty Dollars and Twenty-Two Cents, lawful money of the United States of America, the property of said Toms River Trust Company  \*   \*   \*   contrary to the form of the statute in such case made and provided, and against the peace of this State, the government and dignity of the same."

The record is voluminous. The trial itself consumed a period of three weeks. Anticipating this fact, the trial judge ordered the drawing of a jury under the provisions of chapter 287, *Pamph. L.* 1935.

It appears from the record that one James D. Halton died on May 7th, 1930. On August 21st, 1930, the Toms River Trust Company was appointed administrator *pendente lite* of his estate by order of the Ocean County Orphans Court. Defendant Then was president and defendant Sangor was chairman of the board of directors of that bank. On September 10th, 1930, ancillary letters were issued to the Toms River Trust Company by the register of wills of Philadelphia county, Pennsylvania. It was open to the jury to find that on or about the same day (September 10th, 1930) Then procured the securities of the estate of Halton from the Girard

Trust Company in Philadelphia, by virtue of what was alleged to be a false resolution of the board of directors of the Toms River Trust Company by the terms of which access to the safe deposit box in the Girard Trust Company containing the securities, was given to Then.

The securities in question are next found on deposit with J. F. Frounstine & Company, of New York City, in the "B. W. Sangor Bond Account." This bond account was first opened on October 30th, 1930. There is a conflict of testimony as to just how Sangor got those bonds. At the present trial, Then testified that he personally sold and delivered the securities to Sangor in pursuance of an alleged agreement between the two parties whereby the Toms River Trust Company was to and did in fact receive in return for these securities some $75,000 in par value bonds of the Sangor Hotel Corporation. Both Then and Sangor were also officers of this corporation. It must be noted that this alleged agreement, together with an *ad interim* receipt which was to have been given for the securities, was supposed to have been lost and defendants were permitted to give parol evidence in eliciting the contents thereof. At all events none of the other members of the board of directors ever knew of these transactions. Then also testified in these proceedings that at the time of receiving the securities he noticed that there were certain "illegals," *i. e.,* securities not classified as legal investments under our laws, among them. He therefore appeared in open court before Judge Gallagher in September of 1930, to make a verbal application for instructions with regard to these "illegals" and was told to dispose of them. This testimony is disputed but at any event some two and one-half months after Sangor had borrowed against the securities traced to his account with J. F. Frounstine & Company, on January 31st, 1931, to be exact, there was filed in the surrogate's office of Ocean county an order made by Judge Gallagher in the Orphans Court, dated January 30th, 1931, purporting to authorize the disposition of the "illegals" for the acquisition of "legal investments."

At the hearing on exceptions to the accounting before Judge Jayne, sitting as a master in the Orphans Court in

1932, Then gave testimony to the effect that he did not sell the bonds, nor deliver them to Sangor, and that he did not know how they got out of the bank and into Sangor's possession.

Sangor, as hereinbefore indicated, borrowed $25,000 on these bonds. The majority of the balance was sold for his account and some $7,000 in par value was turned back to the administrator bank. The securities allegedly given in return for the Halton securities brought only $30 on public sale. On the basis of these facts, as aforesaid, and those hereinafter stated, the jury returned a verdict of guilty. The court fined each defendant $1,000 and sentenced each to imprisonment for a term of not less than two nor more than three years. The propriety of that conviction and judgment is here challenged.

*First:* Defendants' first contention is that there should have been an acquittal either at the end of the state's case or at the end of the entire case on the ground that the state failed to prove a conversion, or, if there was a conversion, that it was fraudulent, or with felonious intent.

That the securities in question were converted is fully supported by the proofs.

It is, of course, elementary that proof of fraudulent intent is an essential element of the crime charged. It is also, however, well settled that this intent is entirely a question of fact for the jury—it may be inferred from overt acts; from proof of attending circumstances. *State* v. *Malloy; State* v. *Adams,* 34 *N. J. L.* 410. We think there is ample evidence to support the finding of the jury as to fraudulent intention. It was open to the jury to find that the defendants concealed all knowledge of the transaction from the board of directors of the trust company; that Sangor pledged the securities and borrowed $25,000 for his own use against them; that Then made false entries in the cash book or ledger kept for the Halton estate; and that Then gave false testimony either at this trial or before Judge Jayne in the Orphans Court as to how the securities reached Sangor or that Then and Sangor were associated both in the bank and in the corporation to whom the Halton securities were allegedly sold.

*Second:* By a receipt dated June 5th, 1931, found in the files of the Toms River Trust Company after that institution was taken over by the commissioner of banking and insurance, Sangor acknowledged having received, as trustee, $150,000 of Sangor Hotel Corporation bonds from the Toms River Trust Company. Defendants argue that the refusal of the court to allow the defendants to explain the date of the receipt was prejudicial error. This is not so. The receipt was offered to rebut testimony already given by defendants that the bonds were delivered in February or March, 1931. We fail to see any substantial harm much less reversible error on this point.

*Third:* Defendants next contend that the court erred in instructing the jury that certain testimony from the Orphans Court proceedings received on behalf of the defendants, had no evidentiary effect. This contention is made to rest on the fact that it was for the jury and not for the court to say what evidentiary value was to be placed on this testimony.

It appears that the testimony in question was elicited during the cross-examination of witness, Mary Elverson, who was the court stenographer at the hearing before Judge Jayne in 1932. The state used this witness in order to show that Then had made conflicting and contradictory statements respecting his connection with the alleged sale and delivery of the bonds of the Halton estate to Sangor. Upon cross-examination defendants wished to have the entire transcript read. This was objected to by the state on the ground that such testimony transcended the bounds of proper cross-examination. Specific questions relating to the testimony, before the Orphans Court were then asked, the trial court being very liberal in allowing same. Thereafter the court instructed the jury to the effect that much of this evidence had no effect. We think the court was correct. It is true, of course, that when the statement of a party is put in evidence, everything said on the same subject-matter is admissible. *State* v. *Cohen,* 97 *N. J. L.* 5; 116 *Atl. Rep.* 724. But we think there should have been a limitation to this rule, in that the proof should be confined to those matters only which are the subject-matter of inquiry or investigation. *State* v. *Cohen, supra;* see, also,

16 *C. J.* 571; 10 *R. C. L.* 935, 936; 4 *Wigmore on Evidence*
(*2d ed.*) 508, 509, 510. A careful reading of the proofs leads
us to the conclusion that the testimony complained of went
far beyond liberal limits. The trial court's ruling in this
respect was, we think, proper.

*Fourth:* Defendants next contend that reversible error was
committed in the admission of testimony as to the ultimate
sale of the $75,000 worth of Sangor Hotel Corporation bonds
for $30 and the sale of the hotel property by the receiver for
$36,000. This is not so. The defense itself asked the alleged
profit made on the transaction with the bonds. Both defend-
ants testified as to the cost and value of the property against
which the bonds were issued. We think it was entirely proper
for the state, under the circumstances, to elicit the ultimate
selling price of both the bonds and the property.

*Fifth:* This is substantially the same as the fourth point.
Here the defendants object to the admission of testimony
from an expert to the effect that the hotel property in October,
1930, when $75,000 in par value of bonds were sold, was
worth but $40,000. This evidence is not only proper, we
think, but quite material.

*Sixth:* Defendants' sixth ground of reversal is that the
court erred in excluding as hearsay (a) conversation between
Then and Sangor; and (b) Then's conversation with Judge
Gallagher off the bench. (a) The conversation in question
between the defendants concerned the Halton securities and
their proposed exchange for the hotel bonds. (b) The alleged
conversation with the late Judge Gallagher concerned the
orders given Then relative to the Halton bonds. Defendants
rest their argument for the admissibility of this evidence on
an exception to the hearsay rule—that "where * * * the
state of mind or intent with which any particular act is done
is a relevant fact and the subject of inquiry, declarations
made by the person who does the act, and accompanying the
act and which illustrate or explain its character, are a part
of the *res gestæ,* and are admissible in evidence. *Fromer* v.
*Dennis,* 45 *N. J. L.* 515; *State* v. *Kane,* 77 *Id.* 244." *Kelly*
v. *Pitney,* 98 *N. J. L.* 773, 776; 121 *Atl. Rep.* 593. There
is, however, a limitation to the exception hereinbefore made.

That limitation is succintly set forth in 3 *Wigmore on Evidence* (*2d ed.*) 696, wherein it is said:

"The only limitations as to the use of such statements (assuming the fact of the design to be relevant) are those suggested by the general principle of this exception \* \* \* namely, the statements must be of a *present existing state of mind.* (italics Wigmore's) and must appear to have been made in a natural manner *and not under circumstances of suspicion.*" (Italics supplied.)

In support of these limitations the case of *Hunter* v. *State*, 40 *N. J. L.* 495, is cited. Do the facts of the case at bar fall within the limitations to this exception to hearsay evidence? We think so. As to the conversations between Then and Sangor, the questions elicited are as follows: "*Q.* What did Mr. Then tell you with regard to those illegals, why they were being sold? *Q.* Will you tell us what conversation you had with Mr. Then which lead up to the sale of these securities of the Halton estate by the Toms River Trust Company, as administrator?"

These questions, it must be marked, do not fix the time of the conversations, nor the circumstances under which they were uttered. There is nothing to show that the conversations were part of the transaction by which the bonds were turned over to Sangor. In *Hunter* v. *State, supra* (at *pp.* 538, 539), Chief Justice Beasley quotes as follows from *Wharton on Evidence* (no citation in case):

"The *res gestæ* may therefore be defined as those circumstances which are the *undesigned* incidents of a particular litigated act, which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander; they may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be necessary incidents of the litigated act; necessary, in this sense, that they are part of the immediate preparations for, or emanations of such act, and are not produced by the *calculated policy* of the actors."

We think that the questions in dispute in the case at bar

do not elicit "undesigned incidents" or declarations "not produced by the calculated policy of the actors;" nor do we believe that it can be said with impunity that they were not made "under circumstances of suspicion." 3 *Wigmore on Evidence* (*2d ed.*) 696. We therefore believe that the action of the trial judge in disallowing answers to these questions was proper.

As to conversations between Then and the late Judge Gallagher, the questions called for statements made by Judge Gallagher to Then. Clearly these are not admissible under any exception to the hearsay rule. Judge Gallagher's intent is not in issue. He was not, at the time, acting in his official capacity. No error was committed, in our opinion, in refusing to allow these questions to be answered.

*Seventh:* Defendants contend that the following portion of the charge constituted reversible error:

"I cannot conceive, by any stretch of the imagination or law, how this *ad interim* certificate referred to in this case, not having been recorded in an office where instruments are recorded that constitute liens upon property, I cannot see how it would possibly come within the category of an investment legal for the investment of trust funds."

The *ad interim* receipt referred to is that which was assigned by Sangor to the trust company when he got the Halton securities. It was alleged by the defendants that this receipt in question was for $400,000 and issued by Sangor Hotel Corporation against which the hotel bonds were to be issued at a later date. The receipt was allegedly attached to the agreement under which the Halton securities were issued to Sangor supposedly in return for the hotel bonds. As hereinbefore stated, the agreement could not be found. The same was true of the receipt. We think that it was impossible that the receipt, assuming its existence at one time, could operate as a lien on property. For, the transaction in question by which the receipt was issued took place in October of 1930. The hotel bonds did not come into existence until February 6th, 1931. The mortgage or trust indenture under which the bonds were issued was recorded on February 10th, 1931. This indenture conveyed three tracts of land.

At the time of the alleged issuance of the receipt the Sangor Hotel Corporation had title to only the first tract. Thus we do not see how the receipt issued by the Sangor Hotel Corporation could constitute a lien upon property in October, 1930, the title to which was not acquired until February, 1931. Even assuming that this receipt might constitute an equitable lien, a fiduciary is not authorized to make an investment in such a lien. *Cf. Pamph. L.* 1927, *ch.* 81, *p.* 144. We think the court's charge in this respect is free from error.

*Eighth:* (A) Defendants complain of the following portion of the court's charge:

"The defendants claim and set up that contract and the proceedings under it as a defense. If you believe from the testimony that there was such a contract entered into by Mr. Then on behalf of the Toms River Trust Company as administrator for the sale of those securities listed in the indictment to Mr. Sangor, that the contract was made at or before the time the defendant, Sangor, got possession of those securities from Then, and that both of those parties, Then and Sangor, acted under a color or right and in good faith—that is the important part, the *bona fides* of the transaction; the good faith—*then and then only, could that contract or could that transaction constitute a defense in this case."* (Italics supplied.)

Defendants admit that, standing alone, this charge is correct. Taking it in connection with the rest of the charge we fail to see any error. As a matter of fact, we believe this portion of the charge distinctly gives the defendants the benefit of the claim they set up in their defense.

(B) Defendants further complain of the following portion of the court's charge:

"Now, in any event, ladies and gentlemen, it has been held generally that an executor is a trustee, and trustees, executors, administrators, those acting in fiduciary capacities are not allowed to purchase or speculate in the property with which they are entrusted under their trust. There is only one exception to that that I know of, and that is where they do it with the express consent of the owner and all the persons interested as beneficiaries of such trust."

This complaint is made to rest on the fact that this rule of law has no bearing on a criminal case where the question of fraudulent intent is an essential element of the crime. Not so. The rule of law enunciated by the portion of the charge quoted is unquestionably sound. *Arrowsmith* v. *Von Harlingen,* 1 *N. J. L.* 26, 29; *Flett* v. *South Jersey Title and Finance Co.,* 96 *N. J. Eq.* 244, 245; 124 *Atl. Rep.* 152. In view of the facts that Sangor was a member of the bar, that Then was an active leader in business affairs—a director of a bank—that both had advice of other members of the bar, the violation of this settled elementary principle of law must have a bearing on the intent of the defendants. This is not a case of poor judgment followed by subsequent depreciation in property values as in *State* v. *Cahoon,* 174 *S. E. Rep.* 91; *People* v. *Parker,* 189 *N. E. Rep.* 352, 363, but of criminal conduct. The trial judge's charge on this point is free from error.

(C) Defendants object to the court's refusal to charge as requested concerning the presumption of innocence in favor of the defendants. An examination of the charge reveals that the request was substantially embodied therein. It is settled that the court need not charge in the exact language of the request. *Gardner* v. *State,* 55 *N. J. L.* 17; 26 *Atl. Rep.* 30; *State* v. *Rombolo,* 91 *N. J. L.* 560; 103 *Atl. Rep.* 203; *State* v. *Garris,* 98 *N. J. L.* 608; 121 *Atl. Rep.* 292. Nor is it necessary to repeat a charge already given. *Jackson* v. *State,* 49 *N. J. L.* 252; 9 *Atl. Rep.* 740; *affirmed,* 50 *N. J. L.* 175; 17 *Atl. Rep.* 1104; *State* v. *Plough,* 88 *N. J. L.* 425; 97 *Atl. Rep.* 64. Defendants cannot be heard to complain on this score.

(D) Defendants object to the refusal of their request to charge as follows:

"To constitute the crime of embezzlement there must be evidence of an intent by the defendants, or either of them, to illegally appropriate the property of the Toms River Trust Company, as administrator, to the defendants' own use, and I charge you that if you find that Mr. Then sold the securities in question under a belief that he had a right to, to Mr. Sangor and purchased for the Toms River Trust Company, as

administrator, Sangor Hotel bonds, because he believed such purchase to be a good investment for and in behalf of the administrator, then it is your duty to acquit the defendants.

"The defendants in this case are not required to establish their innocence beyond a reasonable doubt. In fact there is no duty on their part at all to prove their innocence. There is always a presumption throughout the entire trial that they are innocent. In this case the defendants have both testified to the fact that the Toms River Trust Company, as administrator sold the securities described in this indictment through its representative, Mr. Then, and that such an arrangement was made by written contract, which contract the undisputed and uncontradicted evidence shows was lost. That under this contract the Toms River Trust Company, as administrator, agreed to purchase Sangor Hotel bonds, in the sum of $75,000. I charge you that if you believe that there was such a transaction between the Toms River Trust Company, as administrator, through its representatives, Mr. Then and Benjamin Sangor, then it is your duty to acquit these defendants."

This request was also substantially embodied in the main charge.

*Ninth:* Defendants contend that the motion for direction of acquittal at the close of the entire case should have been granted. Not so. The evidence was ample not only to raise a jury question but to support the verdict ultimately rendered. Under these circumstances it would have been error for the court to direct an acquittal. *State* v. *Plough, supra* (at *pp.* 426, 427); *State* v. *Morehous,* 97 *N. J. L.* 285, 296; 117 *Atl. Rep.* 296.

*Tenth:* Defendants contend that the court erred in instructing the jury that the first count of the indictment charged a crime under section 172 of the Crimes act. This contention is made to rest on the allegation that the language of the indictment and the proofs were directed toward an offense under section 167 of the Crimes act. It is true that Mr. Ewart seemed to have so thought. But even that does not make it so. The differences between the two sections are that under section 167 a fiduciary shall have embezzled

*properly committed to his keeping,* not necessarily *the property of the corporation or body of which he is an officer* while under section 172 of the Crimes act the property allegedly converted *must be the property of the corporation* of which the accused party is a director or officer, and not necessarily property which has been *committed to his keeping*. (Italics supplied). A careful reading of the count, under which the defendants were convicted and which has hereinbefore been set forth in detail, discloses the following language: "* * * that Anthony M. Then * * * and Benjamin W. Sangor * * * did * * * willfully, fraudulently and feloniously embezzle, and convert, take and apply for their own use and benefits the goods and chattels, moneys and valuable securities of the said Toms River Trust Company * * *." There can be no doubt that this portion of the indictment alleges a crime under section 172 of the act. Do the proofs support such a charge? We think so. The Toms River Trust Company was appointed administrator *pendente lite* of Halton's estate. It sold and transferred other bonds and property of the estate. There is little doubt but that title to the assets of the estate is vested in the administrator *pendente lite. Hayes* v. *Hayes,* 45 *N. J. Eq.* 461, 463; 17 *Atl. Rep.* 634; *affirmed,* 47 *N. J. Eq.* 567; 21 *Atl. Rep.* 329; 24 *C. J.* 201. Hence when these assets were converted, and, as said before, there is ample evidence to support the finding that they were, they were converted from the one in possession thereof—from the one holding title thereto—from the Toms River Trust Company.

It is true that the first count of the indictment also alleged that the assets were entrusted to the defendants for their safe keeping. This is harmless because at most it is an unnecessary allegation and may be rejected as surplusage. *State* v. *Kern,* 51 *N. J. L.* 259 (syllabus 3); 17 *Atl. Rep.* 114; *State* v. *Cannon,* 72 *N. J. L.* 46; 60 *Atl. Rep.* 177; *State* v. *Kuehnle,* 84 *N. J. L.* 164; 85 *Atl. Rep.* 1014; *affirmed,* 85 *N. J. L.* 220; 88 *Atl. Rep.* 1085.

Nor is the case of *State* v. *Acton,* 109 *N. J. L.* 34; 160 *Atl. Rep.* 217; *affirmed,* 110 *N. J. L.* 449; 166 *Atl. Rep.* 156, urged by defendants, of any avail to them. For, in that case

the defendant was charged with embezzling money entrusted to his keeping, and the proofs disclosed contrary to any charge in the indictment, that the money was not entrusted to his keeping. In the case at bar there are both allegations and proof that the securities were taken from the Toms River Trust Company. We think there is no error on this point.

*Eleventh:* Defendants contend that there was a fatal variance between the charge contained in the first count and the proof in support thereof.

(A) As to the defendant Then, it is contended that nowhere does it appear that he profited one penny through this transaction—that nowhere does it appear that he converted these securities to his own use. The state's answer to this point is that at least one check for $1,761.94 (*Exhibit S-26*), represented proceeds from the conversion of the bonds deposited, after endorsement by Sangor, the payee, to the credit of the Sangor Hotel Corporation in which Then owned stock. It is argued that Then's false entries, his concealment of the facts from the board of directors of the trust company, his contradictory statements before Judge Jayne, plus the fact that Sangor cashed two of the checks (*S-24* and *S-26*) at the bank of which Then was president, the official position held by each defendant in the Sangor Hotel Corporation, whose bonds they purchased, and all the other circumstances exhibited, justified the deducible inference tantamount to the proof of the fact that Then personally profited from the transaction. We think that, under all the proofs on this point, a jury question was presented.

(B) As to Sangor, it is argued that the proofs fail to disclose that he was entrusted with the money he allegedly embezzled. The indictments, as said before, also charged Sangor with embezzling from a corporation of which he was an officer or director. The proofs fully support that charge.

*Twelfth:* Finally, it is contended that chapter 287, *Pamph. L.* 1935, is unconstitutional. The constitutionality of this act has been sustained by our Court of Errors and Appeals in *State of New Jersey* v. *Marguerite Dolbow and Norman Driscoll,* 117 *N. J. L.* 560; 189 *Atl. Rep.* 915.

Judgment is affirmed, with costs.