CATHERINE VOLLKOMMER, PLAINTIFF-RESPONDENT, v. AUGUST G. MENGE, EXECUTOR OF THE ESTATE OF FREDERICK BUGASCH, DECEASED, DEFENDANT-APPELLANT.

Argued October 6, 1936—Decided May 28, 1937.

Before Justices TRENCHARD, BODINE and HEHER.

For the appellant, *Carey & Lane.*

For the respondent, *Henry Pass* and *William Boorstein.*

The opinion of the court was delivered by

HEHER, J.   The gist of this action is the negligent performance of a landlord's gratuitous undertaking to repair the demised premises.   There was a judgment for plaintiff; and defendant appeals.   A prior judgment of nonsuit was reversed, and a *venire de novo* awarded, upon the ground that, due to an erroneous conception of the apposite legal principles, material evidence offered by plaintiff was barred.   116 *N. J. L.* 82.

The single point raised by the reasons for reversal is whether there is any basis in the proofs for the finding of negligence chargeable to the landlord.   We think there is.

Evidence was introduced tending to show the following

matters of fact: On August 15th, 1930, the tenant, of whose family plaintiff was a member, rented the apartment in question. On October 20th, 1932, the tenant advised the landlord's agent for the collection of rents that "something was wrong with the stove" and the attached boiler, as evidenced by "noise" and "rumbling" when the stove was fired. On November 1st, 1932, the landlord, accompanied by the agent, called at the premises and learned from the tenant that the condition complained of had not abated. The landlord said he would "send a plumber." A day or two later, a plumber visited the premises and undertook the making of such repairs as were necessary to remedy the defects of both stove and boiler. He remained at work an hour or more. He had "his tools with him;" and plaintiff testified that, after attaching a valve to the boiler, he "worked inside of the range; he took a pipe and put a wire in it;" and that she knew (from observation) "he had a pipe and took a wire and put it through it, and then he attached it again" to the range. The pipe that was "taken off," and again attached after the plumber had "run a wire through" it, led "from the left part of the boiler to the left side of the stove." The repair work required the "dumping" of "the fire in the stove." Some time later, the landlord's agent inquired whether the plumber had made the repairs, and, upon receiving an affirmative reply, he inspected the apparatus. Thereafter, the tenant had "a small wood fire" in the stove "off and on" until November 6th ensuing, when the range exploded after it had been fired, and thereby the injuries made the basis of the suit were sustained. After the plumber had finished his work, the "rumbling continued * * * a little bit in the pipes still. * * * The noise was still there." Between the firing of the stove and the explosion, water dripped from the faucets in the sink adjoining the range.

A licensed plumber, who qualified as an expert, described this happening as "a water-back explosion of the range;" and he testified, in response to a hypothetical question embodying the evidence thus presented, that "the explosion was caused by the deposit of lime or rust in the circulation pipes or water-

back of the range, either of the two." And he also expressed the opinion that, "under the conditions, the pipes should have been removed and the water-back taken out and thoroughly cleaned of lime deposits." While he said the explosion could have occurred under other conditions, it was plainly a question of fact whether such conditions existed in the instant case. It is also to be observed that, while the landlord testified that the plumber usually employed to do his repair work, one Kull, had not done any work on these premises between May, 1932, and a day or two subsequent to the explosion, Kull was not called as a witness.

In these circumstances, an inference of negligence in the performance of an assumed duty to make repairs was plainly justifiable. While a landlord is under no duty to make repairs in the absence of an express covenant imposing that obligation, yet if he gratuitously undertakes, during the term, to repair the demised premises, he is under a duty to exercise ordinary care and diligence in so doing. And this duty is not confined to the work actually done, as distinguished from the work required and undertaken to be done; the tenant is entitled to rely on the sufficiency of such repairs as the landlord has undertaken. The liability of a landlord for ineffective repairs, where he is not bound to make any repairs, is the correlative of the tenant's right to rely on the sufficiency of such repairs as the landlord has voluntarily undertaken. The duty is so measured.

The dispositive inquiry is whether the circumstantial evidence is sufficient to afford a fair and reasonable presumption of the facts requisite to sustain the asserted cause of action. Circumstantial or presumptive evidence, as a basis for deductive reasoning in the determination of civil causes, is a mere preponderance of probabilities. Is the claimed conclusion from the offered fact a probable or a more probable hypothesis, with reference to the possibility of other hypotheses? *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.,* 111 *N. J. L.* 487; *Kuczynski* v. *Humphrey,* decided this day, 118 *Id.* 321. In the words of Judge Cardozo, in *Lewis* v. *Ocean Accident and Guarantee Corp.,* 224 *N. Y.* 18; 120

*N. E. Rep.* 56, "the law contents itself with probabilities, and declines to wait for certainty before drawing its conclusions."

In *Shute* v. *Bills*, 191 *Mass.* 433; 78 *N. E. Rep.* 96, it was held that where a landlord, who was bound to repair a leak in the gutters of the demised building, attempted to make such repair, but the work was ineffectual to stop the leak, proof of such fact was sufficient to justify an inference that the work was negligently done. The court said: "The only evidence that these repairs, if made by the defendants' agent, were made negligently was some testimony introduced by the plaintiff that after they had been completed the leak continued in the same manner and to the same extent as before. Doubtless the jury might have inferred from the testimony that no repairs were in fact made upon the gutter, but this was not the only possible inference. We are of opinion that if the jury found that such repairs were made, they might then find that the work done was ineffectual to stop the leak at all, and in view of the apparently simple character of what was needed to be done might have inferred from this that the work was negligently done; that the carpenter who had been sent to make repairs upon the roof and gutter did his work so negligently as not to stop the leak but to leave it as bad as before. They might have inferred from the fact that the leak was as bad as before that the work was improperly done."

And there is not, as claimed, a deficiency of proof of the requisite agency between the landlord and the plumber. That relation was plainly inferable from the circumstances.

Judgment affirmed, with costs.