ALICE GRUGAN, PLAINTIFF-APPELLANT, v. SHORE HO-
TELS FINANCE AND EXCHANGE CORPORATION, A
CORPORATION OF NEW JERSEY, DEFENDANT-RE-
SPONDENT.

Argued October 18, 1940—Decided February 4, 1941.

For the plaintiff-appellant, *Altman & Backer.*

For the defendant-respondent, *Cole & Cole.*

The opinion of the court was delivered by

WELLS, J.   This is an appeal from a judgment of nonsuit
entered in the New Jersey Supreme Court, Atlantic County,

in favor of the defendant, Shore Hotels Finance Exchange Corporation, and against the plaintiff, Alice Grugan.

From the allegations of the complaint, as amended in the course of the trial, and from the proofs, it appears that during the summer of 1937 plaintiff rented an apartment in the New Davenport Hotel, which was operated by the defendant. At the time of the renting there was a bulge in the ceiling of the bedroom to be occupied by the plaintiff. There is evidence to show that this condition had existed the previous year when the plaintiff occupied the same room. There is also evidence that Miss Grugan had from time to time requested that the ceiling be repaired.

On the morning of August 25th, 1937, part of the ceiling fell down, and the plaintiff, who had been in the other room of the apartment, rang for the manager. Eventually this call was answered by a Howard Rothmen, the son of the man named on the hotel stationery as managing director.

The plaintiff's testimony is that upon Rothmen's arrival, she said to him—"Look, the mess we are in, as many times as you have been told about this ceiling." He replied—"We will take care of it," and sent the colored boy out for a ladder, adding—"It will be taken care of right now." The colored boy brought the ladder, and Rothmen got up on the ladder and "took the plaster down with his hand, which fell to the floor—the remaining part of the plaster that was loose." He then said to the bell boy—"Clean this mess up and get the vacuum cleaner and clean it up." This the bell boy did. The plaintiff said, however, the plaster still looked loose to her and for that reason she asked Rothmen as he was going out— "Is it going to be safe to sleep in this room tonight?" and he said—"Don't worry about it. There is no more coming down. It is safe, because I took the plaster down."

Later that afternoon the plaintiff was dressing for dinner when something struck her on the head and knocked her down, at which time she sustained the injuries complained of here. Her sister, who was in the room at the time, did not see the plaintiff struck, but heard her cry out and saw her slump to the floor. The sister also testified that there were several pieces of plaster on the floor which had not been there before the plaintiff fell down.

This action was originally predicated on the theory that the plaintiff was a guest in the hotel and that the defendant was under a duty to keep the premises in a condition reasonably safe for her occupancy. In the development of the case, however, it became apparent that the true relationship of the parties was one of landlord and tenant. Accordingly, over objection of defendant's counsel, the complaint was amended so as to charge the defendant with having undertaken repairs which were made in such a negligent manner that the plaintiff was injured as a result thereof.

Ordinarily a landlord is not under any duty to make repairs to the leased premises unless such duty is assumed by the contract of letting. However, there is a well established rule that if a landlord actually undertakes to make repairs, although not required to do so by contract, he is bound to perform the work in a reasonably careful manner. *Nilsson* v. *Abruzzo et al.*, 107 *N. J. L.* 327; 153 *Atl. Rep.* 486. This rule arises from the common law doctrine that "one who undertakes to perform an act and performs it negligently, whereby damage results, is liable for his misfeasance. *La-Brasca* v. *Hinchman*, 81 *N. J. L.* 367; 79 *Atl. Rep.* 885.

The plaintiff contends that from testimony produced at the trial it could be reasonably inferred that the defendant, through its agent, had undertaken repairs and that the work was performed in a negligent manner to the plaintiff's injury. Certain cases are relied upon to support this contention and should be briefly reviewed as an aid toward the disposition of this appeal.

Particular weight is attributed to the case of *Edwards* v. *Stein*, 121 *N. J. L.* 233; 2 *Atl. Rep.* (2d) 44. Here the plaintiff occupied the lower floor of a two-family house, and the ceiling had been weakened by the effects of a fire on the floor above. The landlord brought in a mechanic to inspect the ceiling and was informed by him after an examination that it would be necessary to put in a new ceiling. The mechanic and the landlord were not in accord as to the price to be charged. The following day the landlord returned with a piece of board, explaining that this was to hold up the ceiling "until I get a man to fix it," and nailed it across the

damaged part of the ceiling. Later that day or the next the landlord removed the board. Nothing further was done about curing the obvious dangerous condition and two or three days later the ceiling fell and the plaintiff was injured. A nonsuit was allowed at the trial, but this was reversed by the Supreme Court on the ground that the jury could have found that the landlord undertook repairs and his negligence in so doing had resulted in the injury.

In the case of *Nilsson* v. *Abruzzo, supra,* the plaintiff was the patron of a barber shop and was injured by the falling of a radiator. Testimony was introduced to show that the landlord, in making alterations to one of the walls, had caused an added strain to be placed upon the supports of the radiator so that it fell. This was found sufficient by this court to support a recovery on the theory of the landlord's duty to make repairs or alterations in a reasonably careful manner.

Similar rulings are found in the cases of *Charney* v. *Cohen,* 94 *N. J. L.* 381; 110 *Atl. Rep.* 698, and *Vollkommer* v. *Menge.* 118 *N. J. L.* 360; 192 *Atl. Rep.* 373. In the first case the landlord had sent a man to repair a broken guard-rail on the back of an apartment house, but injury was sustained when it broke again, with testimony being introduced to show that the nails were rusty and the rail rotted. In the second case the landlord had sent a plumber to repair a stove because of complaints received from the tenant of noise in the boiler and pipes. This noise continued after the plumber completed his work, which was described in some detail, and subsequently the plaintiff was injured when the stove exploded.

We are taking no issue with the doctrine enunciated by these cases. However, it does appear that before the doctrine can be applied it must be shown that the landlord has undertaken or "assumed" to make repairs. In each of the cases relied on by the plaintiff, the landlord, by himself or through someone hired for the purpose, had performed some act from which could be inferred an attempt to repair or alter the condition of the premises.

Plaintiff contends that in the present case there is evidence of an undertaking to make repairs, since Howard Rothmen removed the loose plaster from the ceiling and then advised

the plaintiff no more would come down. We do not think, however, that the mere removal of loose plaster from a ceiling recently fallen, a task which should obviously have been performed under the circumstances, can support an inference that the defendant undertook to make repairs. Nor do we find in any statement made by Rothmen an intention to do more than he had already done.

His remarks that "we will take care of it," and "it will be taken care of right now," read in the light of the testimony of the plaintiff as to what she had said preceding and following these remarks, clearly indicate that they referred to cleaning up the "mess" made by the plaster which had fallen. No promise was made after the "mess" was cleaned up that anything further would be done and no promise or undertaking to make repairs could be inferred from what he said about it being safe to sleep in the room. That was merely his opinion. The plaintiff saw Rothmen remove the plaster and saw the ceiling after the plaster was removed. There is no evidence that Rothmen was a carpenter or that his opinion as to the safety was any better than the plaintiff's.

Even though the acts attributed to Rothmen were not sufficient to establish an undertaking to make repairs, it still might be contended that the defendant is chargeable for negligence in the performance of those acts. In such instance, however, it would still be incumbent upon the plaintiff to prove that the injuries sustained were the result of this negligence, and she could not prevail if the evidence was equally consistent with the absence as with the existence of negligence. *Alvino* v. *Public Service Railway Co.*, 97 *N. J. L.* 526; 117 *Atl. Rep.* 709. It should also be noted that since the defendant, under the terms of the tenancy, could not be held liable for the falling of the ceiling in the first instance, it must appear that the second fall resulted directly from the removal of loose plaster by Rothmen.

With respect to the questions of negligence and causation, plaintiff argues that liability might be found here, first, from the fact that Rothmen's acts were insufficient to prevent the plaster from falling again, and second, that in the absence of satisfactory exculpatory evidence upon the part of the

defendant, negligence might be inferred by the application of the doctrine of *res ipsa loquitur*. Since we have already determined that there was no evidence of an undertaking to repair, the fact of the effectiveness or ineffectiveness of Rothmen's acts is immaterial.

The doctrine or maxim of *res ipsa loquitur* has been frequently defined in the courts of this state in the following language:

"This principle is that, when through any instrumentality or agency under the management or control of a defendant or his servants, there is an occurrence injurious to the plaintiff, which, in the ordinary course of things, would not take place if the person in control were exercising due care, the occurrence itself, in the absence of explanation by the defendant, affords *prima facie* evidence that there was want of due care." *Law* v. *Morris,* 102 *N. J. L.* 650 (at *p.* 652), citing *Mumma* v. *Easton and Amboy Railroad Co.,* 73 *Id.* 653.

The requirement that the agency or instrumentality must be under the control or management of the defendant in order to invoke the rule is based upon the theory that the means of obtaining information as to the condition and the causes which brought about the occurrence are wholly within the defendant's possession and it is incumbent upon him to explain because of his peculiar knowledge.

In the present case the apartment was actually under the control of the plaintiff as tenant, and she was also able to observe what Rothmen did in removing the plaster. Accordingly, the defendant, through Rothmen, had no management, control or special knowledge which would support the application of *res ipsa loquitur*. The case of *Law* v. *Morris, supra,* cited by the plaintiff, involved an injury sustained by a customer in a grocery store under the control and management of the defendant and is not pertinent to the circumstances of this cause.

The testimony produced by the plaintiff showed that an accident occurred. Proof of the occurrence of an accident, however, does not raise the presumption of negligence. *Bahr* v. *Lombard, Ayres & Co.,* 53 *N. J. L.* 233; 42 *Atl. Rep.* 730. Negligence is a fact which must be proved and will never be

presumed. In the absence of proof that Rothmen acted in a negligent manner, and that the injury resulted therefrom, we are of the opinion that the trial court properly granted the motion for a nonsuit.

The judgment is therefore affirmed.

*For affirmance*—THE CHANCELLOR, PARKER, CASE, BODINE, PORTER, DEAR, WELLS, RAFFERTY, HAGUE, JJ. 9.

*For reversal*—THE CHIEF JUSTICE, DONGES, HEHER, WOLFSKEIL, JJ. 4.