ANTONETTA ANASTASIO, ADMINISTRATRIX AD PROSE-
QUENDUM OF THE ESTATE OF DOMINICK ANASTASIO,
DECEASED, APPELLANT, v. ARTHUR E. RAST, Jr., RE-
SPONDENT.

Submitted May 5, 1942—Decided June 5, 1942.

Before Justices BODINE, HEHER and PERSKIE.

For the appellant, *Vander Burgh & Aronsohn*.

For the respondent, *Townsend & Doyle* (*Mark Townsend*
and *John J. Wygant*).

BODINE, J. The deceased, Dominick Anastasio, on April
7th, 1939, was riding a motorcyle in an easterly direction on
New Milford Avenue in the Borough of Dumont, Bergen
County. The defendant was proceeding in the same direction
on the same highway. A collision occurred. Deceased was
badly injured and in a semi-conscious condition, when a
witness living in the neighborhood arrived at the scene of
the occurrence and removed him in his car to the hospital
where he died in a little more than two hours.

The error alleged is the striking of the testimony of a
police officer, who went to the hospital and saw the deceased
about an hour and a half before his death. The pertinent
testimony was as follows: "Q. Officer, how long did you stay
in the room with Dominick? A. I was in and out of that
room. I stayed in possibly fifteen minutes, at one time I
stepped out for a moment or two, stepped back again, I think,
for possibly, oh half an hour. Q. What was Dominick's action
during all this time to indicate whether he was or was not

in pain? * * * A. He was screaming and yelling and crying out. He appeared to be in terriffic pain. Q. Now, at any time during this period of time, without any question from you or Officer Christansen, did he volunteer any statement as to how this accident happened? A. Yes, sir. * * * Q. What did you say to him and what did he say to you? A. Well, he was crying out quite loudly, he was in terrible pain, and I said, 'Hello Dom.' And he looked and said, 'Hello Mac,' and Harry spoke to him and we stood there just a second; I had my arm on his shoulder and he quieted down somewhat and then Harry put the question to him about this accident. He started to answer and——" "By the Court: Q. When did he make this voluntary statement you are speaking about, before or after this occurrence? A. I beg your pardon? Q. When did this young man make this voluntary statement? A. After I was in the hospital room for some time. Q. That was after you had asked him some questions and he made some answers? A. Harry made the remark. Q. No. I asked you a question. As I understood it you walked into the room. You heard this young man moaning and screaming in pain. Then you put your hand on his shoulder. He recognized you or Mr. Christansen, who was with you, and he said, 'hello Mac.' Then either he or you asked him questions. A. That is right. Q. That is, asked Anastasio some questions? A. Yes, sir. Q. He made some answers to these questions? A. The one question at that time. Q. One question? A. Yes. Q. When did he make this voluntary statement you speak about? A. He spoke several times after that. Q. After? A. Yes, sir. Q. He only answered one question at that time? A. We only asked him the one question. By Counsel: Q. What was the question you asked him? A. I didn't ask him the question. Q. In your presence what question was asked him? A. Christansen said, 'What happened Dom?' Q. What did he reply? * * * Q. What reply did he make? A. Dominick said, 'He cut me off.' Q. Then later on did he without any question being asked him at all say anything about the accident? A. Yes, several times. * * * Q. Can you remember exactly what he said later on while you were still in the room about how

the accident happened? *A.* He was screaming, and every so often he would scream; at one time; at one time he screamed, 'He didn't give me a chance;' another time he screamed, 'He cut me right off;' that was in between the screaming and yelling, and then he asked us to turn him over, he couldn't stand the pain. *Q.* Do you remember anything else he screamed in connection with how the accident happened, any particular language that he used? *A.* Those were the general outbursts he made."

It is claimed by the appellant that such testimony falls within the *res gestæ* exception to the hearsay rule and was evidential. Not so. In so far as it had any bearing upon the cause of action it was merely a narrative of a past occurrence and not admissible in evidence. *Blackman* v. *West Jersey and Seashore Railroad Co.*, 68 *N. J. L.* 1. No statement was made immediately after the occurrence nor after regaining consciousness as in *Demeter* v. *Rosenberg*, 114 *Id.* 55.

It does not appear that the statement was made under the immediate and uncontrolled domination of the senses. Even though the deceased was suffering intense pain, he had ample time to reflect and to make a self-serving declaration if he desired. The gravity of the deceased's condition and the likelihood of knowledge of the impending death can hardly justify broadening the rule beyond the present tendency without legislative action. The statements were narrative of a past event and as such were not admissible in evidence and were properly stricken. *Slayback Van Order Co.* v. *Eiben*, 115 *N. J. L.* 17; *Sharp* v. *Sears, Roebuck Co.*, 123 *Id.* 494.

There being no other evidence of negligence, the judgment was proper and will be affirmed, with costs.