18 N.J. Super. 66 (1952)
86 A.2d 698
OLIVE M. RILEY, INDIVIDUALLY, AND AS EXECUTRIX OF THE ESTATE OF FLOYD M. RILEY, DECEASED, PLAINTIFF-APPELLANT,
v.
SIDNEY WEIGAND AND CHARLES F. WEIGAND, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1952.
Decided February 13, 1952.
*68 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Sidney M. Schreiber argued the cause for the plaintiff-appellant (Mr. Rocco E. Naporano, attorney).
Mr. Donal C. Fox argued the cause for the defendants-respondents (Messrs. Fox and Schackner, attorneys).
*69 The opinion of the court was delivered by EASTWOOD, J.A.D.
The plaintiff appeals from a judgment of dismissal entered by the Essex County Court, Law Division, at the conclusion of the trial of her negligence action.
The following facts emerge from our review of the record: The accident occurred on December 14, 1949, at about 5:30 P.M., shortly after the plaintiff's decedent had alighted from an automobile at a point about opposite the home of the plaintiff's decedent, 45 Bay Avenue, Bloomfield, New Jersey, and approximately midway between Mill Street and Broughton Avenue. Bay Avenue is a county highway 35 to 40 feet in width, uncurbed at that point, having an asphalt paved surface and a white center line. Darkness had set in. An overhead incandescent street light on a pole in front of plaintiff's home was lighted. The left side of the decedent, who was 53 years of age, had been paralyzed for about eight years and he walked with the aid of a cane. One Robert Clendinning, who was operating his automobile in the rear of three cars, all travelling at a speed of approximately 15 miles per hour in an easterly direction on Bay Avenue, observed the decedent on his side of the road as he turned to come down a grass embankment extending from the sidewalk to the road "and go in the back of my car." Mr. Clendinning had gone about 30 feet beyond the decedent when he heard a noise, and returning found Mr. Riley approximately two feet north of the center white line, attempting to arise. He and the driver of a car that had been following him assisted Mr. Riley into his home. There is a curve in the road at the point where the accident occurred. The car immediately preceding Mr. Clendinning by about 10 or 15 feet obstructed his view of the east lane of traffic, but not as to cars coming in the opposite direction; that when he was about 150 feet away from the scene of the accident, he first observed Mrs. Weigand's car coming in the opposite direction and it was being operated at a slow rate of speed. Mrs. Weigand was travelling about 12 to 15 miles per hour in a westerly direction *70 on Bay Avenue. As she drove along, the right side of her car was about one and one-half feet from the north edge of the road and about three or four feet in from the center line. She had a full view ahead and when she reached the point where the accident occurred, she continued to look directly ahead and saw nothing in front of her; that almost immediately after the Clendinning car had passed her, she heard a noise that sounded like a thud coming from the direction of the rear left side of her car; she immediately pulled her car to the side of the road and stopped; she then went back approximately 45 feet and found the decedent about two feet north of the center line. The decedent, after being taken into the kitchen of his home, was then taken to a bedroom where it appeared that he was bleeding at the nostrils, his arm appeared to be distorted and his left leg broken. Police officer Reeves, who was about two blocks away from the scene, received a radio call informing him of its occurrence. Upon arrival at the Riley home, he telephoned for an ambulance and a medical doctor. After the arrival of the ambulance and while awaiting the doctor's arrival, the police officer asked Mr. Riley what had happened, but, on objection by the defendant, the court refused to permit the officer to testify as to Mr. Riley's reply. Mrs. Riley testified that Mrs. Weigand, who had come into the house, said to her: "Mrs. Riley, can you forgive me for what I have done? I didn't see Mr. Riley."
The plaintiff contends that (1) the trial court erred in entering a judgment of dismissal against the plaintiff and in favor of the defendant; and (2) that the trail court erred in refusing to permit the police officer to testify what the decedent stated as to how the accident occurred.
It seems to us that, at best, the evidence does nothing more than establish the occurrence of an accident. But, as was stated by Mr. Justice Case, in McKinney v. Public Service Interstate Transp. Co., 4 N.J. 229 (1950), at p. 241:
"The mere showing of an accident causing the injuries or death sued upon is not alone sufficient to authorize an inference of negligence; *71 negligence is a fact which must be shown; it will not be presumed. McCombe v. Public Service Railway Company, 95 N.J.L. 187 (E. & A. 1920); Church v. Diffany, 124 N.J.L. 100 (E. & A. 1939); Oelschlaeger v. Hahne & Co., 2 N.J. 490 (1949). To establish a case of negligence and fix liability upon a defendant it is incumbent upon the plaintiff to prove some fact which is more consistent with negligence than with the absence of it. Alvino v. Public Service Railway Co., 97 N.J.L. 526 (E. & A. 1922); Grugan v. Shore Hotels Finance and Exchange Corporation, 126 N.J.L. 257 (E. & A. 1940)."
The "mere scintilla" of evidence rule does not prevail in this State. To grant a motion of dismissal, the trial judge is not restricted to an utter absence of all evidence of a contradictory purport. Gentile v. Public Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951). Of course, the court must necessarily accept as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor. McKinney v. Public Service Interstate Transp. Co., supra. Where fair-minded men might differ as to the conclusions to be drawn from the facts, whether controverted or uncontroverted, the question at issue should be submitted to the jury. Schwartz v. Rothman, 1 N.J. 206 (1948); Antonio v. Edwards, 5 N.J. 48 (1950). However, where there are no disputed facts or disputed inferences to be drawn from the uncontroverted facts, it devolves upon the court to declare the judgment which the law imposes. Kaufman v. Pennsylvania Railroad Co., 2 N.J. 318 (1949).
The undisputed evidence establishes that after decedent had alighted from the automobile of his co-worker, he waited on the grass embankment on the south side of Bay Avenue until the car of Mr. Clendinning had passed and then started across the street in back of his car; in the meantime, the automobile of Mrs. Weigand was closely approaching him on the north side of the street; the cars of Mrs. Weigand and Mr. Clendinning had just about passed each other when both of them heard the noise caused by the collision of the decedent and Mrs. Weigand's automobile; the noise, from *72 the undisputed testimony of Mrs. Weigand, appeared to be at the left rear of her car; the decedent was found attempting to arise at a point about two feet north of the center line of Bay Avenue; Mrs. Weigand was travelling on her right side of the road at a rate of speed of 12 to 15 miles per hour, making observations of the highway and saw nothing ahead of her. We think the record is barren of any evidence to justify an inference of negligence chargeable to Mrs. Weigand. Nor do we think that this statement creates any factual issue from which an inference of negligence may be drawn. Mrs. Weigand testified that she had a clear view of the road ahead of her and at no time was Mr. Riley visible on her side of the road. If Mr. Riley started across the road immediately in back of Mr. Clendinning's automobile, as Mr. Clendinning so testified, then it is a reasonable conclusion that he would not have been visible to Mrs. Weigand. It is also reasonably probable that Mr. Riley's view of the approaching automobile of Mrs. Weigand was obscured by the Clendinning car. We have applied the test that the court must take as true all evidence which supports the view of the plaintiff and give her the benefit of all legitimate inferences to be drawn therefrom in her favor, and conclude that the action of the trial court was sound.
The plaintiff further contends that the court erroneously refused to permit police officer Reeves to testify as to a statement made by the decedent to him. The record is not clear as to the length of time that elapsed between the accident and the statement made to the police officer. However, these facts are undisputed: Mr. Clendinning had stopped his car about 30 feet beyond the point of the accident, returned to the scene, assisted the man into the kitchen of his home; that he then telephoned the police and when he had returned, the deceased had been moved into his bedroom; that as a result of his call, the police officer, who at the time of the accident was approximately two blocks away from the scene, received a code signal, went to the scene and into Mr. Riley's home; that, observing Mr. Riley's condition, he telephoned *73 for an ambulance and a doctor; that after the arrival of the ambulance and while awaiting the doctor, he asked Mr. Riley what had happened. The statement of the deceased that the plaintiff sought to have admitted into evidence was contained in a copy of a police report made by officer Reeves, which the court permitted the police officer to use to refresh his recollection, wherein this item appears: "Mr. Floyd Riley told me that he had been crossing Bay Avenue by his home and that he was near the curb when he was struck." The plaintiff argues that the decedent's statement to the police officer was admissible under the res gestae doctrine.
The term "res gestae" means things done in and about as a part of the transaction on which the litigation in hand is based, or matters incidental to the main facts and explanatory thereof, including acts and words which are so closely connected therewith as to constitute parts of the transaction and without the knowledge of which the main facts might not properly be understood; and, as it is used in the law of evidence, the term more particularly signifies those circumstances which are the undesigned incidents of a particular litigated act, and which may be shown in evidence as explanatory of such act or as showing a motive for acting. Before admitting an utterance as a part of the res gestae, the trial judge must decide the preliminary question of whether the declarant has had any opportunity for deliberation and reflection, or whether the utterance was a spontaneous one. 9 Blashfield's Cyclopedia of Automobile Law and Practice, part 2, sec. 6251, pp. 714, 715. The matters for him to consider are the element of time, the circumstances of the accident, the mental and physical condition of the declarant, the shock produced, the nature of the utterance, whether against the interest of the declarant or not or made in response to questions or involuntary, and any other material facts in the surrounding circumstances. These matters are all to be weighed in determining the basic question, whether the utterance was spontaneous and unreflective and made under such circumstances as to indicate absence of opportunity *74 for contrivance and misrepresentation. In determining what is or what is not admissible under the res gestae rule, the element of time is important, but not controlling. The controlling requirement is that the act or declaration be a spontaneous thing, springing out of the transaction in question itself, before there has been time for deliberation or reflection. To be admissible as parts of the res gestae, expressions of the actors made during an occurrence should be spontaneous and caused by the event. If made after the occurrence, no matter how shortly, and if there is an attempt to explain the event or defend one's self, they are inadmissible. Blashfield's Cyclopedia of Automobile Law and Practice, supra, at pp. 715, 716, 720. Cf. Robertson v. Hackensack Trust Co., 1 N.J. 304, 311, 314 (1949).
It is interesting to note the varying circumstances under which this rule has been considered and applied by our New Jersey courts in several fields of jurisprudence. For instance, in the field of negligence law, in the case of Trenton Passenger Ry. Co. v. Cooper, 60 N.J.L. 219 (E. & A. 1897), it was held that "ejaculatory" words uttered by plaintiff when his horse put his foot on a rail and received shock from electricity therein, causing him to become uncontrollable and run away, injuring horse and occupant of carriage, were held to be admissible as res gestae as "words spoken while an affair is in progress." In Blackman v. West Jersey & Seashore R.R. Co., 68 N.J.L. 1 (Sup. Ct. 1902), the statement of a trolley car conductor made very shortly after an accident, in response to her question as to what the conductor had said when he came to her assistance, was held inadmissible, on the ground that it was merely narrative of a past occurrence. In Demeter v. Rosenberg, 114 N.J.L. 55, 57, 58 (Sup. Ct. 1934), the statement of a woman who had fallen downstairs and had become unconscious, made immediately upon her return to consciousness, as to what had happened, was held to be admissible. In Anastasio v. Rast, 128 N.J.L. 426 (Sup. Ct. 1942), statement made by fatally injured motorcyclist to police officers about one-half *75 hour after he had been removed from scene of accident to hospital, was not part of the res gestae but was merely a narrative of a past occurrence, and testimony concerning such statement was not admissible in death action, though motorcyclist was suffering intense pain at time of statement and likely knew of impending death. In Arenson v. Skouras Theatres Corp., 131 N.J.L. 303 (E. & A. 1944), a statement made by an usherette to the theatre manager in the presence of plaintiff after occurrence of accident as to the cause of wetness of a theatre chair, was held inadmissible as not being a part of the res gestae, but merely narrative of a past occurrence. However, the statement was admitted as one having been made by an agent in the execution of her agency. In Barcello v. Biel, 137 N.J.L. 606 (E. & A. 1948), a statement of a truck driver made to plaintiff after occurrence of accident was held to be "merely narrative of a past event and not part of the res gestae."
We find the rule also discussed in the following workmen's compensation cases: in Murphy v. Brown & Co., 91 N.J.L. 412 (Sup. Ct. 1918), statements made by injured employee to fellow employees as to cause of accident immediately after its occurrence and before and during time his fingers were being bandaged, were held to be admissible. In Slayback Van Order Co. v. Eiben, 115 N.J.L. 17 (Sup. Ct. 1935), a statement of injured employee to co-worker immediately after accident that his eye had been injured by a wrench he was using, was held to be admissible. In Gilbert v. Gilbert Machine Works, Inc., 122 N.J.L. 533 (Sup. Ct. 1939), it was held that statements made to a physician as to cause of injury were held incompetent as were conversations by the employee with his wife. In Rainess v. Grant Finishing Co., Inc., 133 N.J.L. 611 (E. & A. 1946), prior statements made as to purpose of proposed trip were held to be admissible. In Andricsak v. National Fireproofing Corp., 3 N.J. 466 (1950), where a statement made by an injured employee was held inadmissible on the ground that it was made subsequent to the happening of the injury.
*76 In the case of Schloss v. Trounstine, 135 N.J.L. 11 (Sup. Ct. 1946), in an action to recover $10,000 loan made by decedent, notations made by decedent on check stubs in presence of payee immediately prior to making and delivering checks, were held to be admissible. In Robertson v. Hackensack Trust Co., supra, Mr. Justice Case, in discussing the res gestae rule of evidence, stated:
"In Hunter v. State, 40 N.J.L. 495 (E. & A. 1878), Chief Justice Beasley approves the language of Wharton (page 538): `The res gestae may therefore be defined as those circumstances which are the undesigned incidents of a particular litigated act * * * not produced by the calculated policy of the actors'; and again, at page 540, he justifies the admission of the declarations there under consideration as `the natural and inartificial concomitants of a probable act, which itself was a part of res gestae. In such a status of the evidence, I should think that the exception to the principle that rules out hearsay had been carried to its extreme limit, but without transcending such limit.'"
In many cases in the field of criminal law, this rule has also been passed upon. The leading case is Hunter v. State, 40 N.J.L. 495 (E. & A. 1878), wherein statements made by the victim to his son and a note written to his wife a few hours before leaving home on the night of the murder, informing them that he was going to Camden on business accompanied by defendant, were held to be admissible. In State v. Kane, 77 N.J.L. 244 (Sup. Ct. 1909), conversations alleged to have been had by defendant the night before murder with a friend, arranging to meet him the following morning to attend church together, were held admissible. In State v. Ehlers, 98 N.J.L. 236 (E. & A. 1922), a voluntary statement to police immediately after killing his wife and child when he surrendered, that he had killed his child and his wife was held to be admissible. In State v. Doro, 103 N.J.L. 88 (E. & A. 1926), "exclamation" by bystander, pursuing defendant, after she had witnessed the murder committed by defendant, that "he has just murdered somebody; catch him," was held to be admissible. In State v. Then, 118 N.J.L. 31 (Sup. Ct. 1937), affirmed 119 *77 N.J.L. 429 (E. & A. 1938), conversations of defendants relating to unlawful conversion of securities of bank of which defendants were directors held to be inadmissible. In State v. Stephan, 118 N.J.L. 592 (E. & A. 1937), conversations between police officers assisting victim out to the police car, occurring five or six minutes after the shooting, wherein the injured man stated what had happened, were held to be admissible, as "part of the immediate * * * emanations of such act, and are not produced by the calculated policy of the actors."
Our review of the foregoing cases satisfies us that the prevailing New Jersey rule may be epitomized in the language of Mr. Justice Oliphant, in Andricsak v. National Fireproofing Corp., supra, at p. 469, wherein he stated:
"While the time elapsing between the act and the declaration is not of itself the controlling feature, the act must be so naturally and strongly connected as to impress upon the statement the element of truth; the declaration must be made without any element of artificiality; it must be made naturally and not too distant in point of time so that by its very quality and texture it tends to disclose the truth."
In the final analysis, whether the rule is applicable must be resolved by the facts and circumstances of each case where its invocation is attempted. Here, the declaration lacked the element of spontaneity, it was not concomitant with the main fact under consideration nor so connected with it as to illustrate its character. It was merely narrative of a past occurrence and cannot be received as proof of the character of that occurrence.
The judgment is affirmed, without costs.