40 N.J. Super. 576 (1956)
123 A.2d 793
JOSEPH BRATKA, PLAINTIFF-APPELLANT,
v.
CASTLES ICE CREAM COMPANY, A BODY CORPORATE OF THE STATE OF NEW JERSEY. DEFENDANT, AND BREYER ICE CREAM CO., A DELAWARE CORPORATION, BENJAMIN F. ZELL, CHARLES HOLZWARTH AND AL KINBACK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued July 2, 1956.
Decided July 13, 1956.
*578 Before Judges GOLDMANN, BURTON and SULLIVAN.
Mr. David Cohn argued the cause for appellant (Mr. Archibald Kreiger, on the brief).
Mr. Willard G. Woelper argued the cause for respondent Breyer Ice Cream Co. (Messrs. Toner, Crowley, Woelper & Vanderbilt, attorneys).
Mr. John W. Griggs argued the cause for defendants Benjamin F. Zell, Charles Holzwarth and Al Kinback (Messrs. Morrison, Lloyd & Griggs, attorneys; Mr. Arthur J. Simpson, Jr., of counsel).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from a judgment of involuntary dismissal entered in the Law Division at *579 the close of plaintiff's case, in favor of defendant Breyer Ice Cream Co. and the individual defendants Zell, Holzwarth and Kinback, for failure to establish a prima facie case. He contends there were fact questions presented which should have been submitted to the jury, instead of being determined by the trial judge on defendants' motions for judgment under R.R. 4:51.
The action was brought against Castles Ice Cream Company, the Breyer company and the individual defendants, for personal injuries sustained by plaintiff when he found himself trapped inside a refrigerated ice cream delivery truck he was using to make deliveries. Plaintiff consented to a dismissal as to Castles in the course of counsel's opening to the jury. Castles, as plaintiff's employer, had raised as a defense that he had filed a petition against it in the Workmen's Compensation Division, had been successful in obtaining a compensation award, and thus was barred from any recovery in the Law Division action.
Plaintiff had worked for Castles as an ice cream loader for over a year. At the time of the accident he had for some five months been employed as a route salesman of ice cream and ice cream products. In this connection he was furnished with a specially designed refrigerated truck; he testified that he had been driving the particular truck which figured in the accident for two or three months. The truck had three compartments, each four feet wide, five feet long and four feet high, the bottom of the doors being about chest high. The center compartment in which plaintiff was trapped was used for the storage of ten-quart cans of bulk ice cream. The compartments were refrigerated to a temperature well below freezing. They were insulated and lined with tin; the floor was covered with bakelite to prevent the cans from freezing to the metal.
Each of the compartment doors was equipped with a specially designed latch, with a button or cylinder head which, when pushed in, would lock the mechanism and prevent the opened door from closing. Other safety devices were available to safeguard the driver from accidentally being *580 locked inside a compartment. There was a heavy, two-foot chain attached just inside the door, which could be pulled out and left hanging outside the doorframe, thus preventing the door from closing. There was also a safety key, held in a wall clamp inside the truck near the door, with which the door could be opened in case the driver found himself locked in. The ceiling of each compartment was equipped with an electric light bulb.
On November 6, 1952 plaintiff came to work at the Castles plant about 7 A.M. His superior, defendant Holzwarth, traffic manager for Castles, assigned him to the same truck he had been driving during recent months. It was fully loaded. Holzwarth also assigned plaintiff his route. Plaintiff made 14 or 15 stops that day; he delivered items from the front and rear compartment at "almost every stop." He also testified that during the day he had to climb into the several compartments in order to take out products not within easy reach  at one place in his testimony he said this happened at each stop. When he did so he would climb up the side of the truck and reach for the ice cream; his body would be well inside but he would keep one foot outside the truck to make sure that the door would not close on him. He did not use the chain in the middle compartment until the very last stop of the day. On this occasion he climbed up into the compartment in the usual fashion, keeping his foot outside the door, for the purpose of rearranging the contents to prevent shifting and damage to the cans on the return trip to the Castles garage. He testified that he then noticed the chain was curled and frozen to the floor; he proceeded to loosen it, and when it was free he turned around to drop the chain out of the door. At that moment, when his body was completely inside the compartment, the door suddenly slammed shut, imprisoning him. He groped about in the dark for the light bulb, but found only two pieces of wire sticking out of the socket. He said he then felt all over the walls in search of the safety key which would have released the door. He was unable to find it. There followed a desperate attempt to tear the lining off the walls and to *581 attract attention by banging and shouting. After 2 1/4 hours the customer at whose place of business plaintiff had stopped finally heard him and opened the door.
Defendant Breyer admits ownership of the truck. The theory of plaintiff's case against the company is that it was bailor of the truck to Castles and as such was under a duty to furnish a vehicle which was safe for use and which would not expose plaintiff to risk of harm. He seeks to hold the individual defendants liable because they participated in furnishing a truck which was not safe and which exposed him to risk of harm, and this because of their failure properly to supervise and inspect the vehicle and to instruct plaintiff in the use of the safety devices.
Plaintiff's testimony makes it entirely clear that he knew of the danger of the compartment door accidentally closing and locking him inside the truck. He also knew the reasons for having the chain and a safety key in each compartment, and how they might be used. A fellow employee had instructed him about keeping one foot outside the door when reaching into the compartment. Plaintiff denied knowing before the accident that by pushing the safety lock button on the door latch as soon as the door was opened he would set the lock and prevent the door from slamming shut. However, he admitted that the lock was in perfect operating condition on the day in question.
The trial court found there was no duty owing plaintiff by the Breyer company, since he did not establish by what authority Castles used the truck. Assuming a bailment, plaintiff likewise failed to show any violation of Breyer's duty to provide a reasonably safe vehicle from which to operate. The court found there was nothing wrong with the lock or the chain; the truck was a safe vehicle with which to work had plaintiff followed instructions and his own practice of keeping one foot outside the door. The trial judge similarly concluded there was no breach of duty by the individual defendants.
It should be noted that in their answer to interrogatories, which answers were offered in evidence by plaintiff, defendants *582 Castles and Breyer controverted much of plaintiff's testimony concerning the safety instructions and the safety appliances found in the truck after the accident.
Two issues require determination: (1) did plaintiff make out a prima facie case, so that the controversy should have been submitted to the jury, and (2) was plaintiff guilty of contributory negligence or assumption of risk as a matter of law, these matters having been put in issue by the pretrial order? The first must be answered in the negative, and the second in the affirmative.
This being a case where judgment went against plaintiff on defendants' motions made at the close of his case, we of course give plaintiff the full benefit of the truth of the facts adduced by him and all inferences which might logically and legitimately be drawn therefrom.

I.

As to Breyer's liability.
It is undisputed that plaintiff was an employee of Castles and engaged in its business when the accident occurred. The record is completely silent as to any contractual or other legal relationship between plaintiff and Breyer.
Plaintiff launches his argument for holding Breyer liable by baldly asserting the existence of a bailment of the truck to Castles. The record is devoid of any evidence of such an arrangement. All we have in the testimony is that the truck was owned by Breyer and had been used for some time by Castles, and by plaintiff personally for a period of some three months. There is no testimony whatsoever to establish whether such use was with Breyer's authorization, consent or approval, or whether the truck was loaned, rented or the result of some other arrangement. Nor is there any showing as to when Castles came into possession of the vehicle. To hold Breyer responsible there must be legal proof that it was bailor or lessor of the truck. Such proof is completely lacking.
*583 Assuming, arguendo, that Breyer was bailor of the truck, plaintiff did not establish a prima facie case as to its liability. Breyer concedes that the authorities in this State impose certain duties and responsibilities on bailors where the bailed chattel is in a defective and dangerous condition at the time of bailment. In Nelson v. Fruehauf Trailer Co., 11 N.J. 413, 416-17 (1953), the court said that assuming the bailment there was one for mutual benefit, "the highest duty owed to the plaintiff by the defendant was to make the trailer safe for the use to which it was to be put, to give warnings of danger which he knew of with respect to its use, and to make any reasonable inspection of it to ascertain any defects or dangerous conditions. * * * He was not an insurer. The rule as stated many times in this State is that the supplier of an article, not inherently dangerous, the case here, which may become so when used as intended is under a duty to use reasonable care and diligence to see that it is reasonably fit for the purpose for which it is to be used. [Citing cases]" And see 2 Restatement of the Law of Torts, Negligence (1934). §§ 388, 407, pp. 1039, 1095.
Plaintiff asserts that three defects were responsible for the accident and his injuries: the frozen chain, the absence of a light, and the absence of a safety key. The trial court correctly rejected the argument as to the light, noting that the light was "of little moment in this situation in which this plaintiff ultimately found himself because at best it prevented him from seeing when he was locked in the refrigerated compartment of the truck." There was no evidence that the truck was defective or in a dangerous condition at the time of the alleged bailment (an unspecified date preceding the accident by several months, at least), or that Breyer then failed to give warning of dangers likely to be encountered in its use, or failed to make reasonable inspection to ascertain any defects or dangerous conditions. As our cases have often said, negligence is a fact which must be proved and will never be presumed, nor will the mere proof of the occurrence of an accident raise a presumption of negligence. Nelson v. Fruehauf Trailer Co., above, *584 at page 416; Callahan v. National Lead Co., 4 N.J. 150, 153 (1950). The authorities cited by plaintiff in support of his position deal with situations where the defect or dangerous condition clearly existed at the time of delivery of the chattel, and the bailor knew or should have known of that condition.

II.

As to the liability of individual defendants.
Defendant Holzwarth was Castles' traffic manager and plaintiff's "boss." He was responsible for the refrigeration and loading of the trucks, and was the one who assigned plaintiff this particular truck and his route on the day of the accident. Defendant Zell was Breyer's traffic manager; plaintiff testified that Zell would tell the men about "doing our work. * * * Loading the trucks, seeing that the transports were loaded and everything." Sometimes he took care of the cargo on partially unloaded trucks. Defendant Kinback was Breyer's garage foreman, known to plaintiff as the "boss mechanic," but plaintiff never saw him work on this particular truck.
Actionable negligence involves breach of duty and resulting damage. To render one liable on the theory of negligence "there must be some breach of duty, by action or inaction, on the part of the defendant to the individual complaining, the observance of which duty would have averted or avoided the injury." The existence of a mere possibility of a defendant's responsibility for the injury is insufficient. Although proof to a certainty is not required, the evidence must be such as to justify an inference of probability as distinguished from the mere possibility of negligence on defendant's part. Callahan v. National Lead Co., above, at pages 154-5. It has often been said that there is a presumption against the fact of negligence; the burden of proving negligence is upon the plaintiff and must be sustained by proof of circumstances from which defendant's want of *585 due care is a legitimate inference. Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 139-40 (1951).
Giving plaintiff the full benefit of his proofs and all favorable inferences derivable therefrom, he has failed to show any duty owing him by the individual defendants, much less a breach thereof, sufficient to raise a jury question of negligence on their part. There is little more in the proofs than their job titles and the few facts set out above. No individual responsibility for the provision of safety devices, or for the supervision and inspection of the vehicle, or for the instruction of plaintiff in the use of the safety devices, is shown. The pretrial order gave plaintiff leave to make further use of interrogatories beyond the normal discovery period "on the question relating to the employment of individual defendants * * *." There is nothing to show that plaintiff took advantage of the leave so granted; he did address interrogatories to Breyer and Castles, and some of the answers were introduced in evidence. These answers are, of course, evidential as against these corporate defendants only.
At best, the evidence favorable to plaintiff and the reasonable inferences to be drawn therefrom would have raised a jury question as to negligence on the part of plaintiff's employer Castles only. But as to it the action was dismissed by consent. We find nothing in the testimony relating to the individual defendants which would preclude their exculpation from liability to plaintiff as a matter of law.

III.

Contributory negligence and assumption of risk.
Even if it be assumed that the record establishes a prima facie case of negligence against defendants, plaintiff is barred from recovery by reason of his own contributory negligence and assumption of risk. Plaintiff admits that this would be a proper basis for a judgment of involuntary dismissal by the court, without submission of the case to the jury, if "the *586 evidence shows almost conclusively that plaintiff was guilty of contributory negligence or had assumed the risk with knowledge of the danger; and that the requisite elements have been established clearly and conclusively" (italics his), citing Rapp v. Public Service Coordinated Transport, etc., 9 N.J. 11, 18 (1952); Scheirek v. Izsa, 26 N.J. Super. 68, 71-72 (App. Div. 1953); Pona v. Boulevard Arena, 35 N.J. Super. 148, 153-4 (App. Div. 1955), certification denied 19 N.J. 326 (1955); Klinsky v. Hanson Van Winkle Munning Co., 38 N.J. Super. 439, 444 (App. Div. 1955), certification denied 20 N.J. 534 (1956).
There can be no doubt from the record before us that plaintiff knew of the risk of being trapped inside the truck. He was well aware of the danger that if proper precautionary measures were not taken when he entered the compartment, the door might blow shut and he would be imprisoned. It was developed on cross-examination that he had been instructed by a fellow employee in the technique of never entering the compartment without keeping one foot out of the door. He testified that on each of the 14 prior stops made that day he had followed this instruction.
While he was reluctant to admit knowledge of the safety chains and claimed not to know just when they were installed, plaintiff's testimony clearly revealed that they were installed prior to the accident and that he knew exactly what they were intended for. Not only that, but he admitted using the chains in the other compartments on the very day of the accident. In the course of relating how the accident occurred, plaintiff described how he freed the frozen chain and then turned around to drop it out of the door, at which moment the door closed. The court then asked: "Did I understand you to mean that you knew that if you did not have this chain hanging out that the door might lock you in the truck?" and plaintiff answered: "Yes, sir."
We agree with defendants that the record makes it abundantly clear that upon the basis of his experience over a period of over three months plaintiff was well aware of the risk of the door blowing shut if he did not keep his *587 foot out or the chain out, and his deliberate failure to do so constituted contributory negligence and assumption of risk as a matter of law.
While the authorities indicate that contributory negligence and assumption of risk are usually questions for the jury, it is equally plain that in an appropriate case these become questions of law for the trial judge and should not be submitted to the jury. Card v. Carrigan, 137 N.J.L. 722, 724 (E. & A. 1948); George Siegler Co. v. Norton, 8 N.J. 374, 383-4 (1952). Justice Heher, speaking for the court in Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325, 334 (E. & A. 1939), affirming a verdict directed in favor of defendant, said:
"Reason and justice dictate that one cannot deliberately incur an obvious risk, especially where preventive means are at hand, and then hold the author of the danger for the ensuing damage. Whether such conduct be classed as an assumption of risk or contributory negligence, it precludes recovery. There was no controversy here as to what plaintiff did or failed to do; and the evidence was not fairly susceptible of divergent inferences on the question of whether her conduct met the requirements of due care * * *. Plaintiff was sui juris. She indisputably knew and appreciated the hazard of injury resulting from the special circumstances. The danger was obvious to one reasonably regardful for his own security. And there was no element of compulsion in what plaintiff did. The course taken was wholly voluntary; it was in no sense one of necessity or reasonably to be considered as such by the actor. She did not take advantage of known available means to insure her safety. * * *"
So here. Plaintiff's action was voluntary in assuming the hazard; on his own testimony, he was contributorily negligent and cannot recover.
While the record is devoid of any evidence which would negative contributory negligence and assumption of risk on plaintiff's part, it should be noted that the "mere scintilla" of evidence rule does not prevail in this State. To grant a motion of dismissal, the trial judge is not restricted to an utter absence of all evidence of a contradictory purport. Kaufman v. Pennsylvania R.R. Co., 2 N.J. 318, 324 (1949); Gentile v. Public Service Coordinated Transport, etc., 12 *588 N.J. Super. 45, 50 (App. Div. 1951); Riley v. Weigand, 18 N.J. Super. 66, 71 (App. Div. 1952).
Where, as here, there were no disputed facts or disputed inferences to be drawn from the uncontroverted facts, it devolved upon the court to declare the judgment which the law imposes.
Affirmed.