51 N.J. Super. 426 (1958)
144 A.2d 161
GLADYS M. MIJON, ARTHUR MIJON, ROY METZ, INDIVIDUALLY, ROY R. METZ, BY HIS GUARDIAN AD LITEM ROY METZ, ANNA METZ, DECEASED, BY HER ADMINISTRATOR AD PROSEQUENDUM ROY METZ, AND ROY METZ, GENERAL ADMINISTRATOR OF THE ESTATE OF ANNA METZ, DECEASED, PLAINTIFFS-RESPONDENTS-CROSS-APPELLANTS,
v.
VICTOR ACQUAIRE, DEFENDANT-APPELLANT-CROSS-RESPONDENT, AND HOWARD VAN SYCKLE, FRANKLIN LAKES DAIRY, INC., A NEW JERSEY CORPORATION, PETER GALDI, AND WESTWOOD TRANSPORTATION CO., A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS AND CROSS-RESPONDENTS, CONSOLIDATED WITH VICTOR ACQUAIRE, PLAINTIFF-APPELLANT, AND GEORGE ACQUAIRE, PLAINTIFF,
v.
ROY METZ AND GLADYS MIJON, DEFENDANTS, AND FRANKLIN LAKES DAIRY, INC. AND HOWARD VAN SYCKLE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 1958.
Decided July 30, 1958.
*430 Before Judges STANTON, HALL and GAULKIN.
*431 Mr. Arthur J. Blake argued the cause for appellant-cross-respondent Victor Acquaire (Messrs. Emery, Langan, Lamb & Blake, attorneys; Mr. Blake, of counsel; Mr. H. Curtis Meanor on the brief). (Mr. Martin S. Mandon and Messrs. Kushner & Kleiner also filed a brief on behalf of Victor Acquaire as plaintiff-appellant (Mr. Ervan F. Kushner, of counsel; Mr. Robert Kleiner on the brief).)
Mr. William V. Breslin argued the cause for respondents-cross-appellants Gladys M. Mijon et als. (Mr. John D. Morrison, attorney; Mr. Breslin, of counsel; Mr. William J. Scanlon on the brief).
Mr. Charles A. Rooney argued the cause for respondents Westwood Transportation Co. and Peter Galdi (Mr. Gustave A. Peduto and Mrs. Marian V. Rooney-Sheehy on the brief).
Mr. William K. Miller argued the cause for respondents Franklin Lakes Dairy, Inc. and Howard Van Syckle (Mr. Albert M. Neiss, attorney and on the brief; Mr. Miller, of counsel).
The opinion of the court was delivered by HALL, J.A.D.
The suits in which these appeals are taken arose out of a four-vehicle accident occurring at the intersection of Franklin Lakes Road and Colonial Road in the Borough of Franklin Lakes, Bergen County.
The underlying facts were not in dispute. Franklin Lakes Road runs east and west. It is a two-lane road with a white line down the middle. The paved portion is 20 feet wide, with narrow dirt shoulders on each side. Colonial Road intersects it on its northerly side and runs northerly from it. There are no traffic control devices at the corner. The area is not too closely built up, and the legal speed limit was not definitely established.
Just prior to the accident, which occurred on June 6, 1956 shortly before noon with the weather clear and the road dry, three of the vehicles were proceeding easterly on Franklin *432 Lakes Road approaching the intersection. First was the passenger car driven by Mrs. Gladys Mijon, owned by Roy Metz, in which his wife, Mrs. Anna Metz (sister of Mrs. Mijon), and the Metz child were passengers. Following was a one-ton flat-bodied truck owned and driven by Victor Acquaire in which his father, George Acquaire, was a passenger. Behind the truck was a 17-ton milk tank tractor-trailer owned by Franklin Lakes Dairy, Inc. and driven by Howard Van Syckle. Approaching from the opposite direction was a bus owned by Westwood Transportation Co. and driven by Peter Galdi. There was no question of the agency of the non-owner drivers.
Mrs. Mijon, desirous of making a left turn to go north on Colonial Road, stopped near the center of the intersection, gave a hand signal and waited to let the bus go by before making the turn. Her car was struck in the rear by the Acquaire truck and the latter was similarly struck by the dairy truck. The Mijon car was pushed across the westbound lane and collided with the bus, the point of impact and place of coming to rest of the vehicle being on the pavement edge of the shoulder at least ten feet east of the curb line of Colonial Road, i.e., before the bus reached the intersection. All the collisions were severe. The Acquaire truck was pushed forward down Franklin Lakes Road and finally came to a stop almost 400 feet from where the dairy truck struck it. The latter stopped within the intersection. Mrs. Metz died some weeks later and it was stipulated her death resulted from the accident. Mrs. Mijon, the Metz child and the Acquaires suffered personal injuries. All the vehicles were damaged.
Two principal questions were involved. One was whether the dairy truck struck Acquaire before he hit the Mijon car and so caused him to hit Mijon, or whether Acquaire hit Mijon first, knocking the car across the road, and then was in turn struck by the dairy truck so that the latter had no connection with Mijon being forced into collision with the bus. The second was whether there was any evidence of negligence on the part of the bus driver proximately contributing *433 to the injuries and damages of the Mijon car occupants and owner.
A multitude of claims were asserted in three suits. In one, the Mijon people sued the three other vehicle owners and their drivers on claims for personal injuries to Mrs. Mijon and the Metz child, per quod damages of the husband and father, damages for the death of Mrs. Metz through the administrator ad prosequendum, and for her personal injuries to the date of death through the general administrator, with a per quod claim by her husband in connection with the latter, and for damages to the car. The bus driver cross-claimed against Victor Acquaire and the dairy and its driver for contribution under the Joint Tortfeasors Contribution Act, and Acquaire similarly cross-claimed against the dairy and its driver and the bus driver.
In another action, Victor Acquaire (represented by different counsel than in the defense of the Mijon suit) sued Mrs. Mijon, Metz, the dairy and its driver for personal injuries and property damage, and George Acquaire sued the same parties for personal injuries. By counterclaim against Victor Acquaire, the dairy and its driver sought contribution and the dairy claimed property damage, and by cross-claim similar contributory and compensatory relief was sought against Mrs. Mijon and Metz. An answer to the counterclaim against Acquaire was filed by the same counsel who were defending him in the Mijon suit. There was no claim for contribution by the dairy against the bus company or its driver. (The precise nature of the various claims for contribution will be more fully mentioned later).
By a district court action the bus company sued Metz, Mrs. Mijon, Victor Acquaire, the dairy and its driver for property damage.
The suits were consolidated prior to pretrial and so became one action (R.R. 4:43-1(e)). At the trial Acquaire was represented both as to his claim and his defense by counsel who appeared of record in his defense. After the jury was drawn, but before openings, the Acquaire and dairy claims as against Metz and Mrs. Mijon were voluntarily *434 dismissed with prejudice. It was at the same time agreed that the claims for contribution would be tried by the court simultaneously without mention thereof to the jury and determined by it after the jury verdict.
At the conclusion of all the evidence, counsel for the bus company and its driver made a motion for involuntary dismissal, on the merits, of the Mijon claims against the bus company and its driver and the Acquaire cross-claim for contribution against the latter. The trial court granted the motion on the ground that no reasonable mind could come to the conclusion that there was any evidence of negligence against the driver. The bus company then took a voluntary dismissal with prejudice of its claim for property damage and from then on was out of the case.
The jury returned verdicts as follows:
Against Victor Acquaire only:

 Mrs. Mijon ........................... $5,000
 Her husband per quod ................. 1,000
 Death claim (Mrs. Metz) .............. 60,000
 General administrator (Mrs. Metz) .... 20,000
 Mr. Metz per quod, and property damage 7,000
 Metz child ........................... 100

No cause of action on the same claims against the dairy and its driver.
No cause of action on the claim by Victor Acquaire against the dairy and its driver.
No cause of action on the claim of the dairy against Victor Acquaire.
$500 in favor of George Acquaire against the dairy and its driver.
The jury specifically stated in answer to the court's question that they found two accidents as far as Acquaire was concerned, the first in which his truck hit the Mijon car, driving the car across the road, and the second, in which the dairy truck thereafter struck him. A joint judgment was entered *435 in the two upper court suits and a separate one in the district court action.
A single motion for a new trial was made by Victor Acquaire with respect to the verdicts of the Mijon people against him and the verdict in favor of the dairy on his suit, on the ground that they were all contrary to the weight of the evidence, the claimants' verdicts were excessive and the trial court erroneously failed to charge certain of his requests which resulted in the excessive verdicts. The motion was made and argued on his behalf by counsel who had tried the case for him, i.e., the attorneys of record for his defense. The trial court declined to grant a new trial, but reduced four of the six Mijon verdicts, with the alternative of a new trial as to Acquaire only if the claimants did not consent to the reductions. They did and the reduced verdicts were: Mrs. Mijon, $4,000; Mr. Mijon, $600; the general administrator, $10,000; Mr. Metz, $4,500. The verdicts for the death claim and in favor of the infant were not changed.
Victor Acquaire, as a defendant, appealed through his defense counsel, from "the whole of the judgments" and "in addition from" the judgment of involuntary dismissal on his cross-claim in the Mijon suit against the bus driver for contribution and from the denial of his motion for a new trial.
Apparently almost simultaneously the Mijon claimants appealed (in effect a cross-appeal, although not designated as such) from the involuntary dismissal in favor of the bus company and driver and the judgment in favor of the dairy and driver entered on the jury's verdict of no cause for action on their claims against those defendants.
Thereafter Acquaire filed another notice of appeal, this time as a plaintiff in the suit he instituted, through his counsel of record in that action, appealing only from the judgment in favor of the dairy and its driver entered as a result of the no cause verdict on his claim and from the denial of a new trial with respect thereto on the motion made by his defense counsel. The notice was directed only to counsel for the dairy.
*436 At this point comment should be made on the fact that two appellant's briefs have been filed on behalf of Acquaire, one of 53 pages by his defense counsel of record and the other of 43 pages by the attorneys of record in the suit he instituted. The latter is not limited to the scope of his notice of appeal as a plaintiff, goes into matters relating to the money judgments against him and in large part duplicates the line of argument made in his other counsel's brief. The latter brief did not deal with the adverse judgment on his own claim. The cases had been consolidated and there was a joint judgment and a joint order denying a new trial. There should have been only one notice of appeal and one brief, both of which might have been signed by both counsel. Two briefs on behalf of the same appellant in such an action, even though he is involved in different capacities, is an imposition on the court. If the exigencies of the situation dictate one brief longer than permitted by the rules, application may always be made to permit enlargement. We have considered his brief as a plaintiff only to the extent that it deals with the judgment in favor of the dairy on his claim. We also have two separate briefs from the Mijon claimants (by the same counsel), one on their own appeal and the other as respondents in Acquaire's. Since it turned out there were in reality cross-appeals, such should have been avoided by the application of R.R. 1:7-12(b); 2:7-3, absent any order of this court to the contrary.
It is important to note that all of the defendants concede that the Mijon claimants were entirely without fault and entitled to recover. The defenses of contributory negligence were stricken by consent during the trial. As Acquaire said in his brief:
"The plaintiffs, Metz and Mijon, have a nearly perfect case. Realistically, they must collect from someone. The issue is where liability does in fact lie. Even a cursory perusal of the record will show * * * that a close and difficult factual issue was presented as to the negligence of either Acquaire or Van Syckle or both."
*437 The liability of the dairy and Van Syckle, its driver, to the Mijon people was entirely a jury question. The evidence was sharply conflicting on the question, which we previously noted, of whether the tank truck struck Acquaire and drove the latter into the Mijon car thereby projecting it rapidly and out of control across the road, or whether Acquaire first struck Mijon and then was in turn hit by the dairy truck after Mijon was out of the way. The jury was entitled to accept the latter version, which it did, thereby exculpating the dairy from negligence contributing to the damages of the Mijon claimants. Acquaire was a notably poor witness. There is no sound basis to contend that the verdict in this aspect was erroneous. While the Mijon group appealed from this part of the judgment, the point was not even argued in their brief and at the oral argument their counsel conceded it was taken only as a defensive tactic. It is therefore treated as abandoned. By the same token, we find no ground for reversal of the judgment against Victor Acquaire on his claim against the dairy. Again negligence and contributory negligence, or the absence of them, between these parties, was a jury question. Acquaire argues principally that this result as to him was against the weight of the evidence. The trial court did not feel so on the motion for a new trial and, under the principles governing appellate review in such situations, we see no reason to disturb its conclusion. Nor do we find any basis for interfering with the trial court's conclusion denying Acquaire's motion for a new trial on the ground that the Mijon verdicts against him (irrespective of amount) were contrary to the weight of the evidence. Our conclusions in these latter respects are the same whether we apply the standards of Hager v. Weber, 7 N.J. 201 (1951), or those of Hartpence v. Grouleff, 15 N.J. 545 (1954). See Brochin and Sandler, "Appellate Review of Facts in New Jersey," 12 Rutgers L. Rev. 482, 493 et seq. (1958), and Franklin Discount Company v. Ford, 27 N.J. 473, 143 A.2d 161.
So the main question presented to us is the propriety of the involuntary dismissal in favor of the bus company and *438 driver. Error in this respect is asserted by both the Mijon claimants and Acquaire. Both say that the trial judge, in deciding the motion at the end of the entire case, invaded the province of the jury and improperly weighed the evidence, whereas there was sufficient proof of the bus driver's concurrent negligence to have at least required the submission of the question to the jury. Such error, contends Acquaire, requires in justice to all parties, even the Mijon group, an entire new trial as to all, including the dairy. The Mijon claimants, however, urge that the alleged error as to the bus company does not require such a complete new trial but only one as between them and it (to attempt thereby to add more tortfeasors from whom they could seek satisfaction of their claims). The diversity of position is not, however, of further concern to us for it appears that the Mijon appeal in this respect was realistically also only a defensive measure, their counsel expressing satisfaction at the oral argument with their present judgments against Acquaire alone.
While the Acquaire attack is ostensibly and of necessity only on the dismissal of his cross-claim for contribution, we cannot remain oblivious of his real purpose, disclosed by the tenor of his entire argument, viz., to try to obtain by some means another trial of the Mijon claims and the claims for contribution, with all of the other involved vehicles still parties, hoping that another jury might take a different view of the facts and either exonerate him and place the entire blame on the dairy, or at least find both liable, with resultant contributory division of financial responsibility for the sizeable damages. Perhaps it is not amiss at this point to mention that it seems clear that if the bus could have somehow avoided collision with the passenger car, the latter would have undoubtedly crashed head-on into a pole located on the roadside only a few feet from the actual point of impact.
A question suggests itself as to the sufficiency of Acquaire's cross-claim. It does not allege or seek a determination that his wrong-doing, if any, was not single, but joint with Galdi, *439 Van Syckle and the dairy or some of them. The pleading merely states that "* * * in the event it should be found and adjudicated with regard to the claim of the plaintiffs, that the defendants, Peter Galdi, Howard Van Syckle, and Franklin Lakes Dairy, Inc., or any of them, and this defendant, Victor Acquaire, were joint tortfeasors, then this defendant demands that the judgment be entered in favor of this defendant, against the defendants, Peter Galdi, Howard Van Syckle and Franklin Lakes Dairy, Inc., or any of them, under the terms and provisions of the Joint Tortfeasors Contribution Act * * *." (Emphasis ours). (The Galdi contribution cross-claim is in the same form). It is immediately apparent that there is no allegation that the other defendants were joint tortfeasors with Acquaire (if he was negligent at all). The pleadings of the dairy and Van Syckle in the Acquaire suit, by contrast, more properly aver that, while the damages claimed in the complaint resulted solely from the negligence of another party or parties to the suit, if there is any negligence on the part of the pleading defendants, the negligence of the other party "was a major contributing factor and he is jointly liable with the defendants." Demand is then made for "judgment of negligence" against the other party and "a judgment in contribution for all or any part of any sum that may be adjudged against the defendants * * * by virtue of the Joint Tort-feasors Contribution Law." It should be further noted that the pretrial order, quite deficiently, makes no mention whatever of the contribution claims, let alone of the contentions and issues raised by them or of any method of trial and disposition of them.
All the Joint Tortfeasors Contribution Law (N.J.S. 2A:53A-1 et seq.) does, after declaring that the right of contribution exists, is to give a right of action to one joint tortfeasor, after he has paid a "judgment in whole or in part," "to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share." (N.J.S. 2A:53A-3). The right to assert a claim for anticipatory relief in advance of such payment, *440 in the action where liability is asserted by an injured party plaintiff, arises only by virtue of the rule provisions found in R.R. 4:8-5(b), 4:13-6 (with reference to cross-claims against co-parties) and 4:14-1(a) (where the alleged joint tortfeasor has not been made a party by the plaintiff), permitting claims to be thereby made that the party so sued "is or may be liable" to the party so suing "for all or part of the claim" originally asserted against the latter. Such a claim for contribution is a hypothetical one. To be entitled to any relief at this stage, the party asserting it must allege and prove that the party against whom he makes it is a joint tortfeasor within the meaning of the act. Cf. Sattelberger v. Telep, 14 N.J. 353, 367-372 (1954). And if he does so successfully, the most relief he can then receive is an order (entered after a judgment in a plaintiff's favor on the main case) that the sued party is a joint tortfeasor and that, if the suing party later pays more than his pro rata share of the judgment and makes proof thereof, a judgment shall then be entered in his favor against the joint tortfeasor for the excess paid, or, after the entry of plaintiff's judgment, a judgment in his favor against the joint tortfeasor for one-half of the plaintiff's judgment conditional upon his payment of that judgment. See 3 N.J. Practice, § 610; 2 Schnitzer and Wildstein, N.J. Rules Serv., A IV-349 et seq.
Tested by these basic concepts, we believe Acquaire's cross-claim was an inadequate pleading. He did not allege that Galdi, Van Syckle and the dairy, or some of them, were joint tortfeasors with him (if he was liable at all). It would appear, therefore, that he had failed to state a claim upon which relief could be granted, an objection which could be first raised at the trial (R.R. 4:12-8), despite the vacuum in the pretrial order, and that he might, therefore, have no standing there or here to oppose, on the merits, Galdi's motion to dismiss. Since the points were not raised, we will proceed to determine the propriety of the dismissal on the merits, but we feel it is advisable to make these observations for the information and future guidance of the bar *441 and the trial bench, for the particular form of pleading utilized in Acquaire's cross-claim has become a most common one, apparently without full appreciation of the fundamentals involved, and too frequently claims for contribution are inadequately considered and treated in prertial orders.
The test to be applied in determining whether a motion for judgment should be granted at the close of the proofs has been aptly stated by the Supreme Court in the very recent case of Franklin Discount Company v. Ford, supra:
"* * * Where the judge, by the application of the reasoning processes of the mind to the evidence adduced in the case, may properly conclude that fair-minded men cannot honestly differ as to the conclusions to be drawn from the proofs, the motion for judgment should be granted * * *.
Where the opponent of the motion for judgment has introduced substantial competent evidence `the trial court cannot weigh the evidence but must accept as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor.'"
Furthermore, to grant such a motion, "the trial judge is not restricted to an utter absence of all evidence of a contradictory purport," since "the `mere scintilla' of evidence rule does not prevail in this State." Bratka v. Castles Ice Cream Co., 40 N.J. Super. 576, 587 (App. Div. 1956).
And an inference of probability of a defendant's responsibility in a negligence case, as distinguished from the mere possibility, is required to make out a case sufficient to withstand a motion for judgment. Szczytko v. Public Service Coordinated Transport, 21 N.J. Super. 258, 265 (App. Div. 1952).
In our case we find pages and pages of testimony, adduced by four experienced trial counsel during the course of a long trial, concerning the conduct of the bus driver, and it has been the subject of most minute and lengthy dissection and analysis in the briefs. Such evidence all came from the mouths of people involved in the accident: Galdi *442 himself, both through a pre-trial deposition and as a trial witness, passengers in his bus, and through statements made to the investigating police officer right after the accident by the various people concerned. Mrs. Mijon, the Acquaires and Van Syckle could cast little, if any, light on that conduct. The collision between the bus and the passenger car was a most unexpected one and all the crashes happened within seconds, or fractions thereof. There are some discrepancies in the stories, as is to be expected. It would be most strange if there were not. Some of them appear to have occurred because Galdi was a somewhat argumentative witness. It is not necessary to detail all the evidence here. A brief summary of the vital elements disclosed by our review of it demonstrates that the trial court was eminently correct in his conclusion on the motion.
There is not the slightest question that Mrs. Mijon saw the bus approaching some distance to the east as she came to the intersection with the purpose of turning left and that she cautiously stopped, gave the turn signal and was waiting in her lane for the bus to pass before turning. Maccia v. Tynes, 39 N.J. Super. 1 (App. Div. 1956); Pignatore v. Public Service Coordinated Transport, 26 N.J. Super. 234 (App. Div. 1953). It was equally agreed by all witnesses that the bus driver, a man with some 18 years' experience in that occupation, driving his bus on a straight road in a semi-rural area under excellent weather conditions, saw the car come up and stop when he was 450 feet or so from the corner, slowed down gradually to a speed of not more than 25 miles per hour and put and kept his foot on the brake pedal ready for any necessary action. There is no indication that he was not exercising the reasonable care required of an approaching driver when he sees a vehicle coming in the opposite direction preparing to make a left-hand turn. He was not driving unreasonably fast under the circumstances just before the collision and his speed was not a real factor in the situation. When he was 300 feet from the intersection he saw another vehicle (the Acquaire truck) drawing up behind the car, at which time *443 he had decelerated his speed to 25 miles per hour and became even more vigilant, although nothing appears in the evidence that he realized or reasonably should have foreseen that the truck was going to strike the Mijon car and most suddenly project it in his path east of the intersection. The standard of care he was called upon to exercise was obviously with respect to the reasonably foreseeable risk, i.e., the possibility of the car suddenly and voluntarily starting to make the left-hand turn and pulling across at right angles in front of him within the intersection.
There is some variation as to how far he was from the intersection when Mrs. Mijon was struck. The testimony runs from seven yards to 75 to 100 feet at the outside. Acquaire seems to rely principally on claimed possible inferences from this difference and the consequent difference in lapsed time between it and the car-bus collision as forming the basis to require submission to the jury. We do not agree. As we have said, up to this point of time, there was no evidence of any negligence on his part. The crash of the Acquaire truck into the car was a very heavy blow, sufficient to tear off the trunk lid of the car, crumple its back end, knock the front seat back, catapult the Metz child from his mother's lap over the front seat to the rear and propel Mrs. Metz so that her head was on the back seat and her feet on the front. Being completely unexpected by Mrs. Mijon, it could only have the effect of forcing the car at great speed, out of control, into the westbound lane at an angle. As Galdi testified: "* * * the car came into my path, because it was rocking from side to side, and I didn't know which way the car was going to wind up and go." Everything happened in an infinitesimal fraction of a second.
Galdi was without a doubt confronted with an emergency,  as we have said, no driver could reasonably be expected to foresee such an event happening. There is nothing to show that he was in any way responsible for the emergency. It was created, not by any tortious conduct of his, but entirely by that of another. The existence of an emergency and the responsibility for its creation are not questions *444 for the jury where they can elicit but one response from reasonable minds. Harpell v. Public Service Coordinated Transport, 20 N.J. 309, 317 (1956). We concur in the trial judge's conclusion that but one such response was possible here.
There remains the matter of whether there was a jury question as to the reasonableness of Galdi's actions in the split second after the car started toward him and the emergency arose and before the collision. The applicable criterion is well stated in the Harpell case, supra:
"And while one acting in a sudden emergency may be left no time for thought, and so cannot weigh alternative courses of action, but must make a speedy decision, which will be based very largely on impulse or instinct, the conduct required is still that which is reasonable under the circumstances; his own judgment and impulse is still not the sole criterion, and he may still be negligent if his acts are unreasonable; and the question is one for the jury unless, perchance, it can elicit but one response from reasonable minds." (20 N.J. at page 317.)
It is most difficult later to recall with any accuracy thoughts or actions, necessarily of a reflex nature, which take place under emergent conditions during a minute lapse of time, even if one was really conscious of them at the time. All testimony, especially attempts at detailed cross-examination, concerning them must be considered with such in mind. Here there is no question but that at some point in this fractional period of time, undoubtedly as soon as his mind could take in the situation and communicate purposeful action to his muscles, he slammed on his brakes as hard as he could and pulled to the right as far as the topography would permit. He had almost, if not completely, stopped, when the collision occurred. It is apparent to us, as it was to the trial court that there was nothing else he should or might have done. We are not impressed with the suggestion that he should have applied his brakes hard at some undefined earlier point within this hardly measurable time period. Any evidence leading to this contention is at most a mere scintilla. Such splitting of hairs is not only physically *445 unreasonable, but even if earlier action could have been taken, it seems quite improbable that a collision would thereby have been avoided. We entirely agree with the trial judge that no "reasonable mind could come to the conclusion that there is any evidence here of negligence on the part of the bus driver." He did not weigh the evidence in any improper sense and there was no jury question.
It is suggested that the lower court should have sent the question of the liability of the bus to the jury and reserved decision on the motion for judgment until after the verdict. Under our present rules, such would be improper for there is no provision for entry of judgment by the trial court notwithstanding the verdict of the jury. Franklin Discount Company v. Ford, supra. All a trial judge can now do after verdict is to set it aside and order a new trial. By adoption of R.R. 4:51-2 on June 27, 1958 to be effective September 3, 1958, judgment notwithstanding the verdict will hereafter be possible, a procedure well adapted for handling situations like the one here present.
We have carefully examined all the other grounds for reversal urged by Acquaire and find them to be without merit and not to require extended comment. We are impressed that the case was fully and fairly tried by the judge without prejudicial error as to any party, although the trial was long and made difficult by the very number of counsel involved, the problem of getting some witnesses to testify responsively and accurately and the somewhat needlessly persistent attitude of some counsel. The charge was a fair, clear and adequate exposition of the law. The jury clearly understood the claims and issues involved and applied the law as they were instructed, their understanding and intelligent approach being well demonstrated by their answers to the court's oral questions after the verdict concerning their conclusions as to negligence.
More specifically, we feel the trial court was justified under the circumstances in denying Acquaire the right to introduce his own deposition. Nor do we find any reversible error in refusing to charge three of the requests *446 made by Acquaire. The first, that the jury had the right to consider that Mr. Metz and his infant son were living with the Mijons at the time of trial, was so broad and vague in not giving the jury any guide as to how, or in what aspect and extent or for what purpose they could consider the evidence to this effect as not to require it to be charged even if the subject be considered otherwise appropriate. It is urged the denial of the other two requests had the effect of precluding the jury's consideration of the testimony of the bus driver and his passengers, as it bore on liability as between Acquaire and the dairy, the motion for judgment in favor of the bus having been granted. We find it difficult to follow the argument, in the first place because the requests make no mention of the point now urged. They were general in nature as to considering the testimony of witnesses, and the substance of them was adequately charged in the court's general instructions in other language. The judge did not in any manner intimate that the testimony of these witnesses was to be disregarded because the parties who called them had been dismissed from the case, and we do not see how the jury could possibly have had any such idea, especially since it is conceded that all counsel referred to their testimony in summation.
The final contention of Acquaire is based on the denial of his motion for a new trial and revolves around the amount of the Mijon verdicts. As we understand it, one suggestion is that, because the trial judge found mistake in the quantum of four of the six verdicts, therefore there must have been mistake in the jury's finding of liability against Acquaire alone. This seems to us a complete non sequitur not worthy of further discussion; we find nothing factually or legally to support the argument. We have previously herein approved the judge's denial of a new trial. Tied in with this contention is another to the effect that the size of the verdicts, both those even as reduced below and that on the death claim which was refused reduction, are so excessive as only to have been arrived at by reason of mistake, passion, prejudice or partiality which somehow infected the *447 validity of the entire verdict. Again we fail to follow the argument. Liability and damages were clearly separable matters in this situation. The verdicts, though generous, are not so large as to call for our intervention. To our minds it does not "clearly and convincingly appear" that the death claim, or the other amounts as reduced, were or remain the result of mistake, partiality, prejudice or passion. R.R. 1:5-3(a).
The judgment is in all respects affirmed.